UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



| | | |
|---|---|---|
| DOUGLAS HANDSHOE | * | CASE NO. 14-cv-159 |
| | * | |
| VERSUS | * | JUDGE: KEITH STARRETT |
| | * | |
| DANIEL G. ABEL | * | MAG. JUDGE: MICHAEL T. PARKER |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPLY TO MR. HANDSHOE'S OPPOSITION TO ABEL'S
FED. R. CIV. P. 12(b)(2) & (3) MOTION TO DISMISS AND
IN THE ALTERNATIVE 28 U.S.C.A.§1406(a) MOTION TO TRANSFER

Plaintiff now claims that his action for "misrepresentation" under the Digital Millennium Copyright Act is a tort action. In his opposition Mr. Handshoe cites only case law applicable to issues of jurisdiction and venue as such issues pertain to torts.

Defendant Mr. Abel has acted in compliance with an order from the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana arising in a domestic relations case styled: *Yount v. Steitle* /Case No. 665-658 / Division "E", with a judgment signed by the Hon. Judge John Moliason, Jr. which is attached hereto [Exhibit No. 1 - Judgment]. In compliance with the Louisiana Court's judgment, Mr. Abel contacted the internet host provider and provided it with a copy of the Louisiana Court's order. Mr. Handshoe has continued to post the child's drawings and his own comments as exhibits in this matter now before this Court.

Fed.R.Civ.P. 4(k)(1)(A) requires a district judge to determine whether the state in which the district court is located is authorized to exercise personal jurisdiction, unless a federal statute authorizes nationwide service, see Rule 4(k)(1)(D), which the Copyright Act as used by Mr.

Handshoe does not. The addition of Rule 4(k)(2) in 1993 highlights this limitation by authorizing worldwide service of process when the defendant otherwise "is not subject to the jurisdiction of the courts of general jurisdiction of any state". Mr. Abel is clearly subject to the jurisdiction of Louisiana, not Mississippi.

In the absence of a traditional basis for asserting jurisdiction (i.e., physical presence, domicile or consent), due process requires that a non-resident defendant have "certain minimum contacts with the forum [state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

The defendant is subject to "specific jurisdiction" where the cause of action arises out of or relates to the defendant's contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 1083*1083 528 (1985). If the defendant's contacts are of a sufficient magnitude, it is subject to "general jurisdiction"—that is, subject to suit on any matter, including those not arising out of the in-forum activity. See *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

Plaintiff's misguided opposition brief demonstrates precisely why this vexatious lawsuit should be dismissed. Defendant Abel is attorney for Chris Yount, who was involved in a custody dispute in Louisiana's 24th Judicial District. Mr. Yount's son authored a sexually explicit drawing that was placed in evidence by Mr. Yount's ex wife in an ill-fated attempt to gain custody. Both a court psychiatric expert and the judge himself found that the drawing evidenced nothing more than that Mr. Yount's son was a normal teenager. Mr. Yount has sole custody. His ex-wife is now not

allowed anything but supervised visitation for a limited period during one day on each weekend. She is only allowed one phone call per week, unless the minor child decides to call her.

As the sole guardian and custodian of his son, Mr. Yount's properly has control over his son's intellectual property until he becomes an adult, and this includes the drawing in question here. Mr. Abel, as Mr. Yount's attorney, was fully within his right to act as his agent in requesting removal of intellectual property from publication on computer servers located in Texas. Mr. Abel contacted the web host, not the Plaintiff, and the removal occurred in Texas, not Mississippi. Besides, Mr. Abel was doing exactly what the Jefferson Parish Judge ordered him to do.

Mr. Abel was ordered by the court in Louisiana to do whatever necessary to see that the drawing was removed from publication on Handshoe's blog. That court record was also sealed and Mr. Handshoe was aware that it was sealed while making publication of the drawing and patently false commentary about it, doing so for commercial purposes on his commercial blog.

Plaintiff who has a habit of publishing about the real or perceived sexual orientation and alleged proclivities of his various targets, published both the drawing and commentary suggesting that he had expert knowledge and that the drawing evidenced abuse of the son by his father and other men. Mr. Young sued Mr. Handshoe for defamation and cyberstalking. Mr. Abel has met with the U.S. Attorney in New Orleans and Mr. Yount has been contacted by the FBI about this matter as well.  Mr. Abel has been in contact with Louisiana Child Protection agents and with the U.S. Attorney's Office in the Southern District of Mississippi.

Mr. Handshoe's instant lawsuit is nothing more than a strategic revenge tactic and thus an abuse of this honourable court's process. As importantly, Mr. Abel has no contacts with Missisiippi and this court lacks jurisdiction over him.

Finally, Mr. Handshoe's opposition brief repeatedly treats the instant proceeding as being about "torts" (for example, in the final paragraph of page two of the reply brief). A self-proclaimed legal affairs blogger and investigative journalist, Mr. Handshoe apparently does not understand the distinction between statutory violations and tort. Mr. Handshoe chose to bring this action under the Copyright Act. Mr. Handshoe goes to the extent of suggestion a conspiracy between Defendant Abel, a Louisiana judge, and federal felon Aaron Broussard (page two, footnote 3).

These false and scandalous assertions are not only vexatious, but irrelevant to this action. Mr. Handshoe accuses Mr. Abel of violating his constitutional rights, as a tort, and of causing injury to him personally. This is not the proper subject matter of a copyright dispute.

Plaintiff has done nothing to show or evidence facts as to why this court should exercise jurisdiction over Mr. Abel under the DMCA. "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985); *Washington v. Norton Mfrg. Inc.*, 588 F.2d 441, 443 (5th Cir.), cert. denied, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979)); see also *Jobe*, 87 F.3d at 753.

While it is true the federal district courts have exclusive jurisdiction over copyright matters, the Copyright Act is silent on the issue of determining jurisdiction. As already argued in Defendant's brief, the Digital Millennium Copyright Acts confers jurisdiction over a web site owner responding to a take down notice, as Mr. Handshoe has done, but it does not confer any jurisdiction whatsoever

over the sender of that takedown notice, in this case Mr. Abel (cf. *Doe v. Geller*).

Mr. Handshoe argues, using his tort theory, that he has suffered harm in Mississippi and that therefore under this State's long arm statute, this court has jurisdiction over this matter. First, however, copyright is about a taking of intellectual property, and not about personal injury. Second, there is a distinction between where actual injury occurs and where resulting consequences take place. Mr. Handshoe only recites purported consequences of injury stemming from alleged misrepresentation under the DMCA (In reality there was no misrepresentation whatsoever). As the U.S. Court of Appeal for the Fifth Circuit has long recognized:

In determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury. Recognizing that such collateral consequences may be far-reaching (particularly in a commercial tort situation such as the one before us), our precedent holds that consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur.[3] Cycles, 889 F.2d at 619 (tort of conversion did not take place in whole or in part in Mississippi, even though the plaintiff may have suffered economic consequences in Mississippi); *Rittenhouse*, 832 F.2d at 1384 (plaintiff's continuing pain and discomfort suffered in Mississippi following her return to the state did not qualify as a tortious occurrence in Mississippi); *Estate of Portnoy v. Cessna Aircraft Co.*, 730 F.2d 286, 290 (5th Cir.1984) (in construing Mississippi's long-arm statute, court held that a tort occurs when and where the actual injury or accident takes place, but does not occur at the site of the economic consequences of that injury); see also *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 (5th Cir.1981).

Our cases, however, have been careful to distinguish actual injury from its resultant consequences. "[C]onsequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." *Jobe*, 87 F.3d at 753 & n. 2 (observing that "[t]he term `injury' commonly denotes the invasion of any legally protected interest of another" whereas "the term `damage' is understood to mean the harm, detriment or loss sustained by reason of an injury"); see also *Cycles*, 889 F.2d at 619 ("We have held that with respect to Mississippi's long-arm statute a tort occurs where and when the actual injury takes place, not at the place of the economic consequences of the injury."); *Rittenhouse*, 832 F.2d at 1384 (same); *Estate of Portnoy v. Cessna Aircraft Co.*, 730 F.2d 286, 290 (5th Cir.1984) (same).

In fact, there has been no "actual injury" to Handshoe at all, let alone in Mississippi. The requirement of "actual injury redressable by the court," *Simon*, supra, at 39, serves several of the "implicit policies embodied in Article III," *Flast*, supra, at 96. (cf. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S. Ct. 752, 70 L. Ed. 2D 700 (1982).)

Mr. Handshoe admits as much on page 6 of his brief, arguing that the takedown notice was sent to Texas, but the consequences of that act were felt in Mississippi. But such injury is itself laughable. It is undisuted that Mr. Handshoe is not the owner of copyright in the drawing (creative work) authored by Mr. Yount's son.

Mr. Handshoe had no permission from Mr. Yount, his son, or his agent to publish the drawing. Although the drawing was in the court record in Louisiana, Mr. Handshoe's publication of the drawing was not done in the context of an objective and factual reporting of what went on in the court proceeding, but was rather an attempt to sensationalize and punish Mr. Yount and the

Defendant through false allegations and innuendo involving child abuse and molestation, including sodomy. These allegations and innuendo are patently false. Nor did placing the drawing in the record by Mr. Yount's ex-wife place it in the public domain with regards to intellectual property rights, which remained with Mr. Yount and his son. This lawsuit arises out of a desire to complicate and seek illegal redress for the fact that Plaintiff Handshoe has been sued for defamation by Mr. Yount in Louisiana.

There can be no "actual injury" when there was no right to publish the drawing in the first place. In fact, it is Mr. Yount and his son who have been injured and had their copyright violated by Mr. Handshoe, not the reverse.

CONCLUSION

Daniel Abel is a Louisiana attorney for the husband and sole custodial parent of a minor child in a state court divorce proceeding. Mr. Yount has sole legal authority over any drawings or other materials created by his minor son [Exhibit No. 2 - Affidavit of Chris E. Yount].

Mr. Abel has no contact with the State of Mississippi. He does not live there. He does not practice law there. He does not do business there. He has entered into no contracts there. He has committed no torts there. He has not damaged Mr. Handshoe or anyone else in the State of Mississippi.

As Mr. Abel has no legal presence in the State of Mississippi, the United States Court for the Southern District of Mississippi does not have personal jurisdiction, venue, or even subject matter jurisdiction over Mr. Abel or the actions all of which have taken place in Jefferson Parish in the State of Louisiana. The internet host company which took down the minor child's drawings that were at issue in the domestic court order in Louisiana, is located in the State of Texas. As all actions taken

in compliance with the Louisiana Court's order to have the internet host take down the drawing and comments in question took place in the Courts of and State of Louisiana, venue is not proper under Fed. R. Civ. P. 12 either [*See*: 28 U.S.C.A. §1391].

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985); *Washington v. Norton Mfrg. Inc.*, 588 F.2d 441, 443 (5th Cir.), cert. denied, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979)); see also *Jobe*, 87 F.3d at 753.

Plaintiff has done nothing to show or evidence facts as to why this court should exercise jurisdiction over Mr. Abel under the DMCA. The DMCA does not provide actions in tort nor has Mr. Handshoe suffered an injury under tort in Mississippi or anywhere as the drawings at issue were not his but were the exclusive property of the minor child under the authority of his father, Mr. Yount.

### Declaration / Jurat

I, Daniel G. Abel, attorney at law licensed by the State of Louisiana, do hereby declare and verify under penalty of perjury that the foregoing facts and averments set forth by me above, are true and correct to the best of my knowledge and belief, under the provisions of 28 U.C.S. § 1760.

I have executed this declaration on 31 August 2014 and signed hereto.

_____
Daniel G. Abel, LSB No. 8348
[Signed Original Filed With the Court]

Respectfully submitted,

/s/ Daniel G. Abel

Daniel G. Abel
2421 Clearview Pkwy.
Metairie, LA 70001
Telephone: 504.284.8521
Facsimile: 888.577.8815

CC.  US Attorney Kenneth Polite
U.S. Attorney's Office
650 Poydras Street
New Orleans, LA 70130

Served Long-Arm by USPS Mail
On This 31 August 2014 To the Addresses
Provided on the Summons:

Douglas Handshoe
P.O. Box 788
Wiggins, MS. 39577
and
Douglas Handshoe
110 Hall Street
Wiggins, MS. 39577

Certificate of Service

/s/ Daniel G. Abel

I have filed this pleading by USPS Mail
with the Clerks of Court and also sent a
copy by USPS mail to Mr. Handshoe and
on 31 August 2014.

US Attorney Gregory K. Davis
US Attorney's Office
501 East Court Street
Suite 4. 430
Jackson, Mississippi 39201