IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
MISSISSIPPI SOUTHERN DIVISION

DOUGLAS HANDSHOE                              PLAINTIFF

vs                        CIVIL ACTION NO. 1:14-CV-00159-KS-MTP

DANIEL G. "DANNY" ABEL, et al                 DEFENDANTS

---

### RESPONSE TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME BY DEFENDANT, CHRIS E. YOUNT

---

COME NOW, Defendant, Chris E. Yount (Mr. Yount), *Pro Se* Litigant, and file this Response to Plaintiff's Motion for Extension of Time [Doc. #38 and 39) to file a response to Defendants', Ramona Fernandez, Janey Lamar, and the Stuart H. Smith Law Clinic for Social Justice of Loyola University New Orleans (Loyola University), Motion to Dismiss and would show unto the Court the following:

I.

The stated bases for Plaintiff's Motion for Extension of Time are not germane to the Motion to Dismiss filed by Loyola University. The matters stated in Plaintiff's Motion and Memorandum seeking a twenty-one (21) day extension of time to respond to Loyola University's Motion to Dismiss are not related to either Mr. Yount or Loyola

University, to Plaintiff's claims against Mr. Yount and Loyola University, or to the grounds for the Motion to Dismiss filed by Loyola University and the motion to dismiss Mr. Yount is now preparing. In addition, the deadline for responding to Loyola's motion was by Order issued by this Honorable Court, and Mr. Handshoe has presented nothing but an argument about hypothetical amendments Mr. Handshoe might in the future make to justify his motion for additional time. Mr. Yount respectfully suggests that his was a Scheduling Order under Federal Rule of Civil Procedure 16 and under (4) Modifying a Schedule, "A schedule may be modified only for <u>good cause</u> and with the judge's consent" (emphasis added). Accordingly, Mr. Yount and Loyola University would object to and oppose Plaintiff's Motion.

II.

In addition, two of the exhibits Plaintiff attached in support of his Motion [Doc. # 39-1 and 39-2] actually support the grounds for dismissal asserted by Loyola University, and will support grounds for dismissal to be asserted by Mr. Yount. To elaborate on this point first made by the Loyola defendants, this Honorable Court should also be aware of certain other facts regarding litigation involving Mr. Handshoe, to which he has opened the door in his brief for this Honorable Court.

First, the sole basis for federal jurisdiction in this case is purported "misrepresentation" by Mr. Abel under the Digital Millennium Copyright Act (DMCA). The fact finding in Mr. Handshoe's Exhibit (Document 39-2) makes clear that Louisiana resident Mr. Abel was following a Louisiana court order when he served the takedown notice on Mr. Handshoe's

web host, and Mr. Abel was acting appropriately as Mr. Yount's attorney, who had custody over his minor child and thus control over his artistic works, including the pornographic drawing in question here. The DMCA provides that "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages ... incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider . .. removing or disabling access to the material or activity claimed to be infringing. . . ." 17 U.S.C. § 512(f). Liability does not extend to when "an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake. Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." Rossi v. Motion Picture Ass'n of Am. Inc., 391 F.3d 1000, 1005 (9th Cir. 2004) (internal citation omitted). In this case, the Ninth Circuit specifically rejected the imposition of an "objective standard of review for gauging the reasonableness" of a copyright owner's "conduct in notifying" parties of an "allegedly infringing website." Id. at 1004; see also Cabell v. Zimmerman, 2010 WL 996007, at *4-5 (S.D.N.Y. Mar. 12, 2010) (adopting Rossi); Third Educ. Group, Inc. v. Phelps, 675 F.Supp.2d 916, 927 (E.D.Wis.2009) (same); UMG Recordings, Inc. v. Augusto, 558 F.Supp.2d 1055, 1065 (C.D.Cal.2008), aff'd on other grounds, UMG Recordings, Inc. v. Augusto, 628 F.3d 1175 (9th Cir.2011) (same); Dudnikov v. MGA Entm't, Inc., 410 F.Supp.2d 1010, 1013 (D.Colo.2005) (same). Mr. Abel was clearly not making any misrepresentation, let alone a subjectively intentional misrepresentation, to the web host with the court-ordered take down notice. Yet Mr. Handshoe is using this groundless allegation to now mount additional

frivolous state law claims against the Loyola defendants, Mr. Abel, and Mr., Yount in this district court.

Second, the May 28, 2015, decision of the Louisiana Fifth Circuit Court of Appeal (Handshoe's Exhibit 2), contains a *de novo* review of the trial court's decision on Mr. Handshoe's special motion to strike under Louisiana CCP Art 971, the state's anti-SLAPP legislation. Under Louisiana CCP Art. 971, "In making its determination, the court shall consider the pleadings and <u>supporting and opposing affidavits</u> stating the facts upon which the liability or defense is based" (emphasis added). Both the plaintiffs and the defendants submitted the relevant Handshoe & Truitt blog posts into evidence before the court, including the 13-year old child's drawing. The decision contains extensive fact finding relevant to the instant case, including dismissal.

Mr. Handshoe submitted to the jurisdiction of the Louisiana court by filing his special motion to strike. He is now for the second time in less than a year asking this district court to interfere in the affairs of Louisiana state court litigation in which he has made an appearance and subjected himself to the jurisdiction of those courts. Mr. Handshoe makes numerous allegations in his brief that express his displeasure with the recent decision of the Louisiana Fifth Circuit Court of Appeal. His only option is to appeal the unanimous ruling in Louisiana, not to bring extraneous allegations to this jurisdiction. Mr. Handshoe is attempting to get this Honorable Court to come to different factual conclusions based on the same evidence as the Louisiana court of appeal, a type of collateral attack and forum shopping. The court of appeal decision makes clear that Loyola's motion for dismissal is valid, and Handshoe's brief to this Honorable Court comes very close to alleging the Louisiana court's involvement in some kind of conspiracy

against Mr. Handshoe, and he clearly alleges with no substantiation that the Louisiana court has somehow violated his due process rights in concert with third parties. Again, his remedy lies in Louisiana, not in this Honorable Court. Importantly, this is the second time in less than a year that Mr. Handshoe has asked the instant district court to make findings and orders that would interfere with the inner workings of a Louisiana state court. Apparently, this happens when the Louisiana court to which he has submitted makes decisions that Mr. Handshoe disagrees with.

In *Perret v. Handshoe*, while plaintiffs' remand motion was pending, Mr. Handshoe filed a motion for this district court to issue an anti-suit injunction against the Chief Judge of New Orleans Civil District Court. Cf.1:14-cv-00241-LG-JCG Perret et al v. Handshoe, ECF document 19. The order requested was to stop discovery to which Mr. Handshake refused to submit, and in which he makes allegations similar to those contained in his instant brief, including that somehow a 2012 decision of this district court in a case of first impression under the SPEECH Act of 2010 somehow inoculates Mr. Handshoe from all subsequent defamation actions, whether in a United States or foreign jurisdiction, and all future bad or harassing Internet behavior. This is pure fallacy.

Third, this Honorable Court should be aware that before Handshoe sued Mr. Yount in this proceeding for abuse of process and malicious prosecution, he had already sued Mr. Yount (and Mr. Abel) in Hancock County Circuit Court for abuse of process, malicious prosecution, and "conspiracy" based on the underlying alleged malicious prosecution and abuse of process. This current litigation is thus an unwarranted and vexatious duplication of proceedings in a second court involving the same nexus of facts and the same allegations as the instant case. Mr. Yount was never served. The Hancock County case was removed by all remaining defendants to the

instant district court, and Mr. Handshoe egregiously and ironically sought remand based on his sworn assertions to this district court that his damages were limited. See Handshoe v. Broussard, Cause No. 1: 13CV251-LG-JMR (S.D. Miss. Sept. 23, 2013). The district court found: "The Court is not persuaded the defendants' arguments that Handshoe may later seek damages exceeding $75,000. Handshoe's Complaint makes no reference to punitive damages, and in affidavits filed one month after removal of the case to this Court, Handshoe stated that his damages totaled $25,000. (Handshoe II, ECF Nos. 19-1, 20-1, 24-1). In his brief concerning subject matter jurisdiction, Handshoe itemized those damages and specifically stated that the damages he sought at the time of removal totaled $25,000. He also submitted an affidavit in which he specifically disavowed his right to recover any damages in excess of $74,999.99 in this lawsuit. The defendants have not provided the Court with any evidence that disputes the amount of damages claimed by Handshoe." Flying in the face of his sworn testimony to this Honorable Court, in October, 2014, Handshoe amended his complaint in that proceeding and changed the prayer for damages to "$817,000, to be trebled according to the law and for all other damages including punitive, exemplary and other damages …".

As noted in Lewis v. CHARLEY CARRIERS, INC., Civil Action No. 5: 09-CV-170-DCB (S.D. Miss. Mar. 31, 2010). at footnote 2: "If the plaintiff later attempts to amend the complaint to seek damages in excess of $75,000, exclusive of interest and costs, this Court may entertain removal under Tedford v. Warner-Lambert Co., 327 F.3d 423, 428-29 (5th Cir. 2003). See also Lee v. State Farm Mutual Automobile Ins. Co., 360 F. Supp. 2d 825, 832-33 (S.D. Miss. 2005) (stating that under Mississippi rules a plaintiff may amend as late as the close of evidence

at trial, however "the Court presumes that the state trial judge would prohibit such an amendment as it would be allowing the Plaintiff to perpetrate a fraud on this Court ").

Fourth, Mr. Handshoe makes many extraneous and conclusory allegations about third parties involved in litigation with Mr. Handshoe. Despite his conspiratorial accusations, the Louisiana Fifth Circuit decision makes clear these other litigations are "unrelated" to each other, and Mr. Yount's only role in them has been as a process server who served Mr. Handshoe with civil process on a number of occasions. Mr. Handshoe unsuccessfully argues, for example, that those who file DMCA take down notices regarding copyright infringement are somehow bound to seek injunctive relief from this federal district court and to submit to Its jurisdiction. However, the DMCA clearly only binds jurisdiction over the alleged copyright infringer, in this case Handshoe, and does not bind jurisdiction over the person alleging infringement in a take down notice, in this case Mr. Abel acting on behalf of Mr. Yount as guardian of his minor child. "The DMCA provides explicitly that internet users, such as Sapient who wish to rebut a takedown notice must consent to the jurisdiction of a federal district court (see 17 USC 512(g)(3) (D)), but the statute does not require copyright owners who send takedown notices (such as defendants here) to consent to personal jurisdiction (see 17 USC 512(c)(3)). That difference must be viewed as intentional." Doe v. Geller, 533 F.Supp.2d 996, 1010 (N.D.Cal. 2008).

Fifth, Mr. Handshoe argues that "additional torts under Federal Law have been perpetrated by the Defendants" because Mr. Abel presented the Louisiana court order mandating removal of the pornographic drawing from Slabbed to Handshoe's web host. As found by the Louisiana Fifth Circuit Court of Appeal decision entered into evidence by Mr. Handshoe, "Notice of copyright infringement

pursuant to the Digital Millennium Copyright Act was sent to the webhost of www.slabbed.org, who also provided Mr. Handshoe with a copy of the trial court's order. On February 18,2014, the blog post containing the drawing as well as the www.slabbed.org website was taken down by the webhost in response to the copyright infringement notice and violations of the webhost's terms of service." Two reasonable inferences can be made from this fact finding. First, the web host took down Handshoe's web site not only because of the DMCA notice Handshoe alleges was in violation of the "misrepresentation" provision of the DMCA, but also for other violations of the web host's terms of service, which is a private contractual dispute between the web host and Mr. Handshoe and does not involve instant defendants. He has no damages attributable to the alleged misrepresentation.

  Second, the law is clear that when a third part is aware of a court order removing or enjoining publication of offensive or injurious material, and that a person acts in contravention of that order whether directed to him or her or not, he or she can be held liable for violating the order. Cf. South Cent. Bell Tel. Co. v. Constant, Inc., 304 F.Supp. 732 (E.D.La.1969), aff'd, 437 F.2d 1207 (5th Cir.1971). As summarized in Reporters Com. v. American Telephone & Telegraph, 593 F.2d 1030 (D.C. Cir. 1978): "There, prior to litigation, one firm obtained a consent injunction prohibiting another firm from employing the former's name in advertisements or statements to customers. The issue was whether a telephone company with knowledge of the injunction was obligated to take steps to prevent transmission, by use of its equipment, of statements breaching the terms of the order. The District Court held that it was, stating: 'As soon as South Central Bell was apprised of the fact that its subscriber, Constant, was by use of South Central Bell's equipment, violating the injunction imposed by the Court, it had a duty not to act

in any way in concert with Constant to effectuate or perpetuate the violation. South Central Bell had the means to prevent its equipment from being used to violate the injunction, and its failure to do so would, at the very least, have amounted to a passive participation in the violation.'"

Clearly there was nothing untoward or actionable in presenting the Louisiana court order mandating the removal of the offensive material to Handshoe and the web host. There was certainly no violation of Handshoe's civil rights in the issuance or presentation of the Louisiana order. Again the hypothetical amendments Handshoe says he needs additional time to make will not affect the fact that this case against the Loyola defendants (and Mr. Yount and Mr. Abel) should be dismissed. There is no true need for additional time that will affect Mr. Handshoe's response to the dismissal motion.

The other two exhibits are not relevant to Mr. Yount and Loyola University, Plaintiff's claims against Mr. Yount and Loyola University, or to the grounds for the Motion to Dismiss filed by Loyola University. The rendering of the decision by the Louisiana Fifth Circuit Court of Appeal has not changed any facts in a way that would affect the dismissal urged by Loyola, and soon to be urged by Mr. Yount, and there is no reason for Mr. Handshoe to have additional time. If Mr. Handshoe is going be allowed to add new allegations about defendants every time a Louisiana or other foreign court makes a decision not to his liking, this proceeding will never end. None of Plaintiff's exhibits support his Motion for Extension of Time to file a response to the Motion to Dismiss. Nor do they demonstrate any actionable conduct on the part of Mr. Yount or Loyola University in the Louisiana cases in which they have participated on behalf of a minor child.

WHEREFORE, PREMISES CONSIDERED, Mr. Yount and Loyola University respectfully request that this Honorable Court enter an order denying Plaintiff's Motion for Extension of Time [Doc. #38] or for such other relief deemed appropriate by the Court under the circumstances.

Respectfully submitted this the 4th day of June, 2015.

                           Chris E. Yount, Defendant

                           BY:   Chris E. Yount, Pro Se Litigant.

CHRIS E. YOUNT
545 TERRACE STREET
JEFFERSON LA 70121
Email: ceyount@gmail.com

## CERTIFICATE OF SERVICE

I, Chris E. Yount do hereby certify that on this day I FedEx the foregoing with the Clerk of the Court, then sent notification of such filing to the following by email and also mailed the same via U.S. Mail to the following:

Douglas Handshoe, Pro Se Plaintiff
Post Office Box 788
110 Hall St.
Wiggins, MS 39577

Daniel G. Abel, Pro Se Defendant
2421 Clearview Parkway
Metairie, LA 70001

W. Edward Hatten Jr. (MSB #8859)
Bradley E. Dean (MSB #101161)
DUKES, DUKES, KEATING & FANECA, P.A.
2909 13th Street, Suite 601
Post Office Drawer W
Gulfport MS 39502
Phone: (228) 868 – 1111
Fax: (228) 863-2886
Email: ed@ddkf.com
       bdean@ddkf.com

This the 4th day of June, 2015.

BY:   */s/ Chris E. Yount*

CHRIS E. YOUNT
545 TERRACE STREET
JEFFERSON LA 70121
Email: ceyount@gmail.com