

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JUN 15 2015

ARTHUR JOHNSTON
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DOUGLAS HANDSHOE | ) | PLAINTIFF |
| | ) | |
| v. | ) | Civil Action No.1:14-cv-159-KS-MTP |
| | ) | |
| DANIEL G. "DANNY" ABEL | ) | |
| CHRIS YOUNT, RAMONA FERNANDEZ, | ) | |
| JANEY LAMAR AND STUART SMITH | ) | DEFENDANTS |
| LAW CLINIC DBA LOYOLA | ) | |
| UNIVERSITY NEW ORLEANS | ) | |
| | ) | |

### MEMORANDUM OF LAW IN OPPOSITION OF MOTION
### TO DISMISS DEFENDANTS, RAMONA FERNANDEZ, JANEY LAMAR AND
### STUART SMITH LAW CLINIC

Plaintiff's First Amended Complaint against Defendants Ramona Fernandez, Janey

Lamar and the Stuart Smith Law Clinic of Loyola University New Orleans (the Loyola

Defendants) adequately asserts personal jurisdiction under the two prong test and claims upon

which a United States Court could ostensibly grant relief for the following reasons:

### FACTUAL BACKGROUND

The violation of 17 U.S.C. § 512 and subsequent use in a Louisiana defamation lawsuit at

the heart of this instant action represent the sixth such defamation suit against Plaintiff Douglas

Handshoe to which Chris Yount, Vaughn Perret, Charles Leary, Daniel Abel and their shell

company Trout Point Lodge Ltd. of Nova Scotia have filed or extensively participated, in

coordination with certain third parties such as the Loyola Defendants , against Plaintiff in his

personal capacity over publications that have appeared on the website belonging to Slabbed New

Media, LLC. Four of these six defamation actions have also joined Plaintiff's lawyers and/or

Plaintiff and other third parties including the Louisiana lawsuit at the heart of the controversy in

1

this civil action which joined the lawyer for Slabbed New Media LLC for the sole purpose of conflicting him out from representing Slabbed New Media, LLC. These multiple civil defamation actions by the defendants represent a coordinated, international and multi-state campaign of willfully violating the legal processes contained in 17 U.S.C. § 512 with the ulterior motive of using the willful violations of 17 U.S.C. § 512 to manufacture evidence for use in Louisiana based defamation suits against Plaintiff in his personal capacity, coupled with the deprivation of certain procedural due process rights guaranteed under the 1st and 14th Amendment to the Constitution of the United States by the Louisiana 24th Judicial District Courts, the Louisiana 5th Circuit Court of Appeals to collaterally attack the final judgment rendered in the United States District Court case styled *Trout Point et al v Handshoe 729 F. 3d 481* as well as deprive Plaintiff Handshoe of his valuable First Amendment right to perform journalism in the public interest as agent for a peer recognized media company that focuses on public interest journalism.

The Loyola Defendants filed a Motion under Fed. Rules Civ. Proc. 12(b)(2) (Lack of Jurisdiction) and 12(b)(6) (Failure to State a Claim) to dismiss this case. Plaintiff rebuts the Motions in turn.

## LACK OF PERSONAL JURISDICTION

The Loyola Defendants have contended in pleadings filed before this Honorable Court they had a valid legal interest in the underlying defamation litigation via representation of a minor child. This is a material misrepresentation of fact. (See ECF #39-1). However for purposes of rebutting the Loyola Defendants Motion to Dismiss per Fed. Rule Civ. Proc. 12(b)(2) the Plaintiff need not recite the additional case law beyond those cases asserted by the Defense in support of their motion as he agrees the proper cases were cited in the Loyola

Defendants Combined Motion and Memorandum of Law (ECF #30) and Memorandum of Law

in Support of ECF #30 (ECF #31) for the purposes of jurisdictional arguments. I quote from

*Allred v. Moore & Peterson* 117 F.3d 278 (5th Cir. 1997):

> "When a nonresident defendant presents a motion to dismiss for lack of personal
>
> jurisdiction, the plaintiff bears the burden of establishing the district court's
>
> jurisdiction over the nonresident. The court may determine the jurisdictional issue
>
> by receiving affidavits, interrogatories, depositions, oral testimony, or any
>
> combination of the recognized methods of discovery." Stuart v. Spademan, 772
>
> F.2d 1185, 1192 (5th Cir.1985) (citing Thompson v. Chrysler Motors Corp., 755
>
> F.2d 1162, 1165 (5th Cir.1985); Washington v. Norton Mfrg. Inc., 588 F.2d 441,
>
> 443 (5th Cir.), cert. denied, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979));
>
> see also Jobe, 87 F.3d at 753.

Attached herewith is Exhibit 1, Registration of Loyola University New Orleans as a

Mississippi Non Profit Corporation (September 30, 1992) downloaded from the Official Internet

portal of the Mississippi Secretary of State which lists Marguerite Thompson, 105 S. Union St.,

Natchez, Mississippi 39121 as Agent for Service of Process for Loyola University.[1]

Attached herewith is Exhibit 2 is a certified copy of the Warranty Deed to real property in

the County of Hancock, State of Mississippi, "being Lot 36 and Part of Lot 37 of the Third Ward

of the Town of Waveland" which are owned by Loyola University.  This real property deed,

including improvements, bears the postal address 318 South Beach Blvd., Waveland, MS 39576.

The Loyola University Defendants, sued in their official capacity are certainly subject to

the personal jurisdiction of the Mississippi Courts under the long arm statute contained at § 13-3-

---

[1] Prior to 1996 Loyola University New Orleans was known simply as Loyola University as shown in the
accompanying deed due to the Association of Jesuit Colleges and Universities granting exclusive branding rights to
Loyola University Chicago to call itself Loyola University.

57, Mississippi Code Ann. (Supp. 1996) as the organization and its employees have substantial contacts with this forum in the registration of the Institution with the Mississippi Secretary of State as a Non Profit Corporation and the ownership of real property and improvements in Waveland, Mississippi.  Loyola contracts with Mississippi residents to provide maintenance services to the land and structure, which was rebuilt after Hurricane Katrina's destruction on August 29, 2005.

Again I quote from *Allred v. Moore & Peterson* 117 F.3d 278 (5th Cir. 1997):

> At the outset, we reject Allred's reliance on *Hyde Construction Co. v. Koehring*, 321 F.Supp. 1193 (S.D.Miss.1969), for the proposition that "service of process on Allred in Mississippi constituted the commission of a tort in Mississippi for purposes of satisfying the requirements of the Mississippi long-arm statute." Although the district court in Hyde, examining section 13-3-57's statutory predecessor, acknowledged that the abuse of process tort must "accrue" within the geographical limits of Mississippi and so found, it nevertheless repeatedly emphasized what we think to have been the determinative factor in its analysis: the defendant in the abuse of process action had "domesticated itself or qualified to do business within the State of Mississippi having appointed ... [a] registered agent for service of process between [all relevant dates]." Hyde, 321 F. Supp. at 1210 (noting that the defendant corporation "was authorized to transact business in Mississippi")

Additionally plaintiff avers that notwithstanding the above, the Loyola Defendants are also subject to the Mississippi long arm Statute pursuant to the "tort prong" of the law.  The injury leading to damages substantially occurred from the violations of 17 U.S.C. § 512 and

misuse of that legal process to achieve an ulterior purpose. The Supreme Court of Mississippi well described the elements of the tort in *State ex rel. Foster v. Turner*, 319 So.2d 233, 236 (Miss. 1975) citing 1 Am. Jur. 2d Abuse of Process § 1, & § 2, pp. 250-51 (1962):

> The action of abuse of process consists in the misuse or misapplication of a legal
> process to accomplish some purpose not warranted or commanded by the writ. It
> is the malicious perversion of a regularly issued civil or criminal process, for a
> purpose and to obtain a result not lawfully warranted or properly attainable
> thereby, and for which perversion an action will lie to recover the pecuniary loss
> sustained. While some cases have confounded the action for abuse of process with
> the action for malicious prosecution, the two are essentially different and
> independent. An action for abuse of process differs from an action for malicious
> prosecution in that the latter is concerned with maliciously causing process to
> issue, while the former is concerned with the improper use of process after it has
> been issued. Thus it is said in substance that the distinction between the two is
> that the malicious use of process is the employment of process for its ostensible
> purpose, but without reasonable or probable cause, whereas the malicious abuse
> of process is the employment of a process in a manner not contemplated by law,
> or to obtain an object which such a process is not intended by law to effect.

The process employed was the submission of a takedown notice pursuant 17 U.S.C. § 512 for a manner not contemplated by the law in using the takedown notices and counter-notifications as evidence in a later filed Louisiana Defamation Action.  Additionally in furtherance of that scheme, the Loyola Defendants submitted a Motion to enroll in a case where by their own admission they were not hired to represent any party to the action. Worth noting is

the Loyola Defendants also failed to produce an appointment to represent a minor child in the action styled *Yount V Handshoe, Truitt et al* and the hearing transcript produced by the Plaintiff shows the Judge presiding over the matter refusing to let the Loyola Defendants participate beyond being observers in the hearing of March 30, 2015. The Loyola Defendants never filed a proper motion to intervene or did they submit an amicus brief in the appellate matter, all proper courses of action the Loyola Defendants could have taken but deliberately chose not to in favor of methods that have deprived the Plaintiff of substantive due process, including the right to face his accusers rather than a rogue law clinic acting the part of strawman for other parties not named in the suit.

Part of the processes involving the misuse of 17 U.S.C. § 512 included substantial events which occurred in Mississippi including Plaintiff having to:

1. Disable material purposely misidentified as infringing in deprivation of Plaintiff's First Amendment Rights.

2. The drafting and submission of a Counter Notification pursuant to 17 U.S.C. § 512.

3. Restoration of the purposely misidentified material that was properly counter-notified, such completion of the process being asserted (and adopted as fact) as evidence in a meritless defamation action.

Plaintiff avers there are multiple injurious evets in the chain described above, from having to disable a public court record from public view due to a maliciously prepared takedown notice which abridged Plaintiff of First Amendment right to access and report upon on open court proceedings. Additionally, injury results from compliance with the legal processes contained in 17 U.S.C. § 512, such compliance with this United States law later used against

Plaintiff by the Loyola Defendants that was adopted by the appeals court as part of the factual basis for the opinion.

Finally, Plaintiff has sustained injury in the form of Deprivation of his Civil Rights under the color of state law, first in the application of a court order that was entered in a domestic divorce case to which Plaintiff had no interest beyond reporting upon the proceedings along with the fact he never received notice of the proceedings but for which he is now being held accountable for violating by a Louisiana appellate court. The Loyola Defendants all point to that order to justify their specious, unethical and tortious behavior in the defamation case. Plaintiff points to the same order as proof that his fundamental right to due process has been trampled by institution acting under the color of a state court appointment (ECF 30-2) which a clear read shows does not apply to Plaintiff but for which he is now being made to answer under in Louisiana.

The Loyola Defendants have been involved in the chain of events underlying this action literally preceding the submission of the DMCA takedown Notice of February 28, 2014 by Abel and Yount. Per the appellate brief submitted by the Loyola Defendants, they actually incorporate and misstate the DMCA takedown notice submission of February 28, 2014 at ECF #30-4, page 5 of 12:

> On February 28, 2014, the Slabbed blog, was removed from Appellee's service provider due to a violation of that web host's terms of service; however, on the same day, Appellee published the minor child's drawing again on the new slabbed blog.

7

This clear reference to the DMCA takedown notice sent by Defendants Abel and Yount that not only misstates the events[2], it also betrays the fact the Loyola Defendants were in fact working closely with Abel and Yount to abuse the United States Copyright Law to silence public interest journalism on a public judicial proceeding.[34]

This Honorable Court clearly has jurisdiction over the Loyola Defendants.

## FAILURE TO STATE A CLAIM

The May 28, 2015 ruling of Judge Robert Chaisson renders Plaintiff's Malicious Prosecution Claims moot, possibly temporary, but nonetheless Plaintiff concedes he has no claim under the Tort of Malicious Prosecution as of this date.

The legal standard to dismiss for Failure to State a Claim involving a Pro Se litigant is well stated in *Roebuck v Dothan Security et al*, Unpublished Opinion of the United States 5th Circuit Court of Appeals [Case No.12-60649]

> "(A)ccept all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). In the instant case, Roebuck was proceeding pro se when he filed his complaint. Although pro se complaints are

---

[2] The Slabbed New Media website was never removed from its service provider due to a violation of its web hosts terms of service on February 28, 2014.
[3] Paragraph 20 of the amended complaint pleads the factual basis for a civil conspiracy count.
[4] The original brief jointly submitted by Yount and Loyola for which Loyola would later withdraw its signature, pleaded as fact, dates when Trout Point Lodge of Nova Scotia, Charles Leary and Vaughn Perret maliciously sent Misrepresented takedown notices under 17 USC 512 to Plaintiff's webhost.

held to less stringent standards than those crafted by attorneys, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citation and internal quotation marks omitted).

Plaintiff admits his claims contained in the Amended complaint against the Loyola Defendants for Abuse of Process are not well articulated. However he believes there is enough factual basis for the Court to construe valid claims for relief can be granted from the facts provided by the Plaintiff for Abuse of Process and Civil Conspiracy. He submits to the sound discretion of this Honorable in its determination of that issue.

Finally and respectfully, Plaintiff points out the Louisiana Appellate Court Opinion, which singled out the Plaintiff in his personal capacity for publications to the Slabbed New Media LLC website, setting a Louisiana precedent in the process, does not comport to the most basic press protections found in *Near v. Minnesota*, 283 U.S. 697 (1931) and *Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976) against prior restraints on free speech. This Court can insure the rule of law prevails over a state sanctioned reign of retaliation against a public interest journalist involving state actors carrying out a nefarious, pecuniary private purpose in the dark of night under a court seal which clearly is meant to apply to only one party in the litigation.[5]

---

[5] The anonymously published Real-Malice Blog located at www.real-malice.blogspot.ca actually posted about the sealed hearing of March 30, 2015 on that date in a post that threatened additional lawsuits against Plaintiff that would join Attorney Connie Montgomery along with Plaintiff's spouse, who attended that hearing as a representative of Slabbed New Media, LLC.

Should this court dismiss Plaintiff's First Amended Complaint under Fed. Rule Civ. Proc. 12(b)(6), Plaintiff respectfully requests that the claims be dismissed with leave to amend, so that he may better articulate the claims of Misrepresentations under 17 U.S.C. § 512 and the Abuse of that Process for an ulterior reason that has resulted in damages to the Plaintiff including deprivation of his valuable civil rights.

Respectfully submitted this 15th day of June, 2015,

_____

Douglas Handshoe, Pro Se
Post Office Box 788
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, hereby certify that on June 15, 2015 the foregoing was sent for electronically filing by me via the Clerk of the Court using the ECF system which sent notification of such filing to the following ECF participants:

Edward Hatten (MSB #8859)
Bradley Dean (MSB #101161)
Dukes, Dukes, Keating and Faneca, P.A.
Post Office Drawer W
Gulfport, MS 39502
Phone: (228) 868-1111
Fax: (228) 863-2886
ed@ddkf.com
bdean@ddkf.com
Attorneys For Ramona Fernandez, Janey Lamar and Loyola University New Orleans

I, Douglas Handshoe, certify I have sent a true and correct copy of the foregoing to the following via United States Mail:

Daniel G. Abel
Pro Se
C/O The Super 8 Motel / Desai Enterprises
2421 Clearview Parkway, Room 106
Metairie, LA 70001

Chris Yount
Pro Se
545 Terrace Street
Jefferson, LA 70121

Respectfully submitted this 15th day of June, 2015,

_____

Douglas Handshoe, Pro Se
Post Office Box 788
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com