IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

```
                                    SOUTHERN DISTRICT OF MISSISSIPPI
                                            FILED

                                          JUN 26 2015

                                          ARTHUR JOHNSTON
                                    BY_____ DEPUTY
```

DOUGLAS HANDSHOE ) PLAINTIFF
)
v. ) Civil Action No.1:14-cv-159-KS-MTP
)
DANIEL G. "DANNY" ABEL )
CHRIS YOUNT, RAMONA FERNANDEZ, )
JANEY LAMAR AND STUART SMITH ) DEFENDANTS
LAW CLINIC DBA LOYOLA )
UNIVERSITY NEW ORLEANS )
)

### MEMORANDUM OF LAW IN OPPOSITION OF MOTION TO DISMISS DEFENDANTS, RAMONA FERNANDEZ, JANEY LAMAR AND STUART SMITH LAW CLINIC

Plaintiff's First Amended Complaint against Defendant Chris Yount along with Ramona

Fernandez, Janey Lamar and the Stuart Smith Law Clinic of Loyola University New Orleans (the

Loyola Defendants) adequately asserts personal jurisdiction under the two prong test and claims

upon which a United States Court in Mississippi could grant relief for the following reasons:

### FACTUAL BACKGROUND

The violation of 17 U.S.C. § 512 and subsequent misuse in a Louisiana defamation

lawsuit at the heart of this instant action represent the sixth such defamation suit against Plaintiff

Douglas Handshoe to which Chris Yount, Vaughn Perret, Charles Leary, Daniel Abel and their

shell company Trout Point Lodge Ltd. of Nova Scotia have filed or extensively participated, in

coordination with certain third parties such as the Loyola Defendants, against Plaintiff in his

personal capacity over publications that have appeared on the website belonging to Slabbed New

Media, LLC. Four of these six defamation actions have also joined Plaintiff's lawyers and/or

Plaintiff and other third parties including the Louisiana lawsuit at the heart of the controversy in

1

this civil action which joined the lawyer for Slabbed New Media LLC for the sole purpose of conflicting him out from representing Slabbed New Media, LLC. These multiple civil defamation actions by the defendants represent a coordinated, international and multi-state campaign of willfully violating the legal processes contained in 17 U.S.C. § 512 with the ulterior motive of using the willful violations of 17 U.S.C. § 512 to manufacture evidence for use in defamation suits against Plaintiff in his personal capacity, coupled with the deprivation of certain procedural due process rights guaranteed under the 1st and 14th Amendment to the Constitution of the United States by the Louisiana 24th Judicial District Courts and the Louisiana 5th Circuit Court of Appeals to collaterally attack the final judgment rendered in the United States District Court case styled *Trout Point et al v Handshoe 729 F. 3d 481* as well as deprive Plaintiff Handshoe of his valuable First Amendment right to perform journalism in the public interest as agent for a peer recognized media company that focuses on public interest journalism.

Defendant Chris Yount filed a Motion under Fed. Rules Civ. Proc. 12(b)(2) (Lack of Jurisdiction) and 12(b)(6) (Failure to State a Claim) to dismiss this case. Plaintiff rebuts the Motion in turn.

## LACK OF PERSONAL JURISDICTION

The limitations on the reach of the personal jurisdiction of a Mississippi court is well laid out in *Allred v. Moore & Peterson* 117 F.3d 278 (5th Cir. 1997):

> The exercise of personal jurisdiction over a nonresident defendant comports with due process principles only when two requirements are met. First, the nonresident defendant must have "purposefully availed himself of the benefits and protections of the forum state by establishing `minimum contacts' with that forum state."
> *Felch v. Transportes Lar-Mex, Sa De CV*, 92 F.3d 320,323 (5th Cir. 1996) (citing

*Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.), cert. denied, 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *International Shoe Co. v. Washington*, 326 U.S. 310, 315-17,66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *Burger King Corp. v. Rudzewicz*,471 U.S. 462, 475-77, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Second, the exercise of personal jurisdiction over the nonresident defendant "must not `offend "traditional notions of fair play and substantial justice."'" Felch, 92 F.3d at 323 (quoting Wilson,20 F.3d at 647; Asahi Metal *286286 Indus. Co. v. Superior Court of California, 480 U.S. 102, 113-15,107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987)).

The `minimum contacts' portion of the inquiry is further subdivided into the kind of contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action.

If a nonresident defendant has sufficient minimum contacts with the forum state the fairness of the exercise of personal jurisdiction by the Mississippi court is then evaluated. Again quoting *Allred v. Moore & Peterson* 117 F.3d 278 (5th Cir. 1997):

"The fairness prong for personal jurisdiction requires federal courts to consider (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) `the interstate judicial system's interest in obtaining the most efficient resolution of controversies'; (5) `the shared interest of the several States in furthering fundamental substantive social policies.'" *Bullion v. Gillespie*, 895 F.2d 213, 216 n. 5 (5th Cir. 1990) (citing *Asahi*, 480 U.S. at 113-15, 107 S.Ct. at 1033 (quoting *World-Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 288-90, 100 S.Ct. 559, 563,62 L.Ed.2d 490 (1980)))

Plaintiff contends the violation of 17 USC § 512 along with the subsequent misuse of that process in the Louisiana defamation case subject Defendant Yount to the specific personal jurisdiction of this Honorable Court.

## Minimum Contacts

*International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), first set forth a minimum contacts test as a way to establish jurisdiction over a defendant that is not physically present in the state. The *International Shoe* Court recognized that a court's ability to exercise personal jurisdiction over a defendant historically required the defendant to be physically present in the forum. In analyzing the physical presence concept, the Court in *International Shoe* determined that a nonresident who had a random contact with the forum state should not be haled into court there on a matter unrelated to that contact, yet the absence of physical presence should not defeat jurisdiction for actions directed at the forum state. While maintaining a physical presence is not irrelevant to jurisdictional analysis, it is not necessarily determinative of it either.

In cases involving intentional torts, *Calder v. Jones*, 465 U.S. 783 (1984) gave rise to an expansion of the minimum contacts inquiry. The Calder "effects test" recognizes that a defendant need not ever have been physically present in the forum state to be subject to the personal jurisdiction of the courts located there.

The Calder effects test represents an additional way for establishing personal jurisdiction over a nonresident defendant who may never have been to the forum state. In *Allred v. Moore Peterson*, 117 F.3d 278, 287 (5th Cir. 1997), the court found that the "[K]ey to Calder is that the

4

effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum. Whether these effects, either alone or in combination with other contacts, are sufficient to support in personam jurisdiction will turn upon the particular facts of each case." (*Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985)). Simply stated, *Calder* allows a court to find that a nonresident defendant who intentionally aims his or her tortious conduct at the forum state has established minimum contacts with the forum, even if the defendant has not established a physical presence there.[1]

In *Calder*, the Supreme Court found that when an alleged tort-feasor's intentional actions are expressly aimed at the forum state, and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, then the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions. This holds true even if the tort-feasor's conduct occurs in a state other than the forum state.[2]

The intentional aiming element requires intent to perform an actual, physical act in the "real world", rather than intent to accomplish a result or consequence of that act. In this instant matter, the intentional act element is satisfied because Defendants Yount and Abel acted intentionally when they sent a DMCA takedown notice to Plaintiff's webhost, which in turn forced Plaintiff to disable material on the website he publishes. Part of the processes involving

---

[1] *Mullins v. Test America, Inc.*, 564 F.3d 386,402 (5th Cir. 2009)
[2] See *Southmark Corp. v. Life Investors, Inc.*,851 F.2d 763, 772 (5th Cir. 1988) ("In Calder, the Supreme Court held that when an alleged tort-feasor's intentional actions are expressly aimed at the forum state, and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions."); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 *386386 (5th Cir. 1999) ("Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333 (5th Cir. 1982) (holding that specific personal jurisdiction existed in defamation action even though the non-resident defendant was not present in the forum state, but concluding that, "[i]f, as is alleged in this case, [the defendant] causes injury in [the forum state], he is covered by the [long-arm] statute").

the misuse of 17 U.S.C. § 512 included substantial events which occurred in Mississippi
including the brunt of Plaintiff's injury:

1. Disable material purposely misidentified as infringing in deprivation of Plaintiff's
   First Amendment Rights to perform journalism in the public interest.

2. Expenditure of significant amounts of time in drafting and submitting the counter
   notification pursuant to 17 U.S.C. § 512.

3. Restoration of the purposely misidentified material that was properly counter-
   notified, such completion of the process being asserted (and adopted as fact) as
   evidence of "republication" in a meritless defamation civil action.

Finally in *SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) the court found that "a party
has consented to personal jurisdiction when the party took some kind of affirmative act" such as
"accepting a forum selection clause, *submitting a claim*, filing an action--that fairly invited the
court to resolve the dispute between the parties." (Emphasis added) In this instance there is no
dispute that Defendant's Yount and Abel submitted a claim to Plaintiff's business' webhost
under a Federal Statute and then misused the claims process contained 17 U.S.C. § 512 as
evidence in a Louisiana defamation case filed against Plaintiff in his personal capacity.

The Supreme Court of Mississippi well described the elements of the tort in *State ex rel.
Foster v. Turner*, 319 So.2d 233, 236 (Miss. 1975) citing 1 Am. Jur. 2d Abuse of Process § 1, &
§ 2, pp. 250-51 (1962):

The action of abuse of process consists in the misuse or misapplication of a legal
process to accomplish some purpose not warranted or commanded by the writ. It
is the malicious perversion of a regularly issued civil or criminal process, for a
purpose and to obtain a result not lawfully warranted or properly attainable

thereby, and for which perversion an action will lie to recover the pecuniary loss
sustained. While some cases have confounded the action for abuse of process with
the action for malicious prosecution, the two are essentially different and
independent. An action for abuse of process differs from an action for malicious
prosecution in that the latter is concerned with maliciously causing process to
issue, while the former is concerned with the improper use of process after it has
been issued. Thus it is said in substance that the distinction between the two is
that the malicious use of process is the employment of process for its ostensible
purpose, but without reasonable or probable cause, whereas the malicious abuse
of process is the employment of a process in a manner not contemplated by law,
or to obtain an object which such a process is not intended by law to effect.

The process employed was the submission of a takedown notice pursuant to 17 U.S.C. §
512 for a manner not contemplated by the law in using the takedown notices and counter-
notifications as evidence in a later filed Louisiana Defamation Action.

Plaintiff avers there are multiple injurious events in the chain described above, from
having to disable a public court record from public view due to a maliciously prepared takedown
notice which abridged Plaintiff of First Amendment right to access and report upon on open
court proceedings.  Additionally, injury results from compliance with the legal processes
contained in 17 U.S.C. § 512, such compliance with this United States law later used against
Plaintiff by the Defendants that was adopted, respectfully, without any prior basis in the law, by
the Louisiana Appeals Court as part of the factual basis for their opinion denying Plaintiff basic
procedural due process access to the ostensibly public Louisiana Court System.

7

Mr. Yount has been involved in the chain of events underlying this action literally preceding the submission of the DMCA takedown Notice of February 28, 2014 at the heart of this matter. Per Mr. Yount's own affidavit submitted to this Court (ECF 23-2), he actually incorporated the misrepresentations made in DMCA takedown notice submitted on February 18, 2014 by Charles Leary, Vaughn Perret and Trout Point Lodge of Nova Scotia in paragraph 28 and the one of February 28, 2014 by he and Defendant Abel in paragraph 41 betraying Yount's specific, intimate knowledge of the various schemes hatched by the Trout Point group involving misuse of the processes found in 17 U.S.C. § 512.

These clear references to misrepresented DMCA takedown notices sent by Defendants Abel and Yount as well as their business partners at Trout Point Lodge Nova Scotia not only misstates the events, it also betrays the fact these Defendants worked closely overall with each other to abuse the United States Copyright Law to silence public interest journalism on public judicial proceedings.[3]

Plaintiff avers that he has established a prima facie case to satisfy the minimum contacts prong of the inquiry.

### Exercising Personal Jurisdiction Over Yount in Mississippi Does Not Offend Traditional Notions of Fair Play and Substantial Justice

In this matter, the burden upon Yount to litigate the case in Mississippi would not be unfair. Yount has repeatedly traveled to Mississippi as Abel's agent to harass Plaintiff and his wife including service of process of numerous Trout Point Canadian lawsuits. He has sworn affidavits in support of these Canadian proceedings exceeding that of a person simply serving a

---

[3] Paragraph 20 of the amended complaint pleads the factual basis for a civil conspiracy count.

lawsuit.[4] Yount deliberately targeted his conduct toward a Mississippi resident and business, and profited from his work serving process in Mississippi in doing so. Further, Mississippi has a compelling interest in protecting its residents from tortious injuries by nonresidents.[5] Similarly, Plaintiff has an equal, if not greater, interest in securing relief in his home state, where the brunt of the injury to his business and thus his investment therein was sustained.[6] Both Mississippi and Louisiana would be efficient forums for resolution of this case. Mississippi's substantive policy of protecting its citizens from injury is greater than Louisiana's interest in an event that, assuming for purposes of this analysis, did not occur.

## FAILURE TO STATE A CLAIM

The May 28, 2015 ruling of Judge Robert Chaisson renders Plaintiff's Malicious Prosecution Claims moot, possibly temporary, but nonetheless Plaintiff concedes he has no claim under the Tort of Malicious Prosecution as of this date.

The legal standard to dismiss for Failure to State a Claim involving a Pro Se litigant is well stated in *Roebuck v Dothan Security et al*, Unpublished Opinion of the United States 5th Circuit Court of Appeals [Case No.12-60649]

> "(A)ccept all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "To survive a motion to dismiss, a complaint must

---

[4] Yount offered an affidavit in the third Canadian defamation action regarding Plaintiff's medically diagnosed hearing impairment for example, in support of a Trout Point motion which essentially accused Plaintiff of lying to the Canadian Court about his profound hearing loss.
[5] *Walk Haydel*, 517 F.3d at 245
[6] Slabbed New Media, LLC filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi on June 16, 2015.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). In the instant case, Roebuck was proceeding pro se when he filed his complaint. Although pro se complaints are held to less stringent standards than those crafted by attorneys, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citation and internal quotation marks omitted).

Plaintiff admits his that not all of his claims contained in the Amended complaint against the Defendants for Abuse of Process are well articulated. However he believes there is enough factual basis for the Court to construe valid claims for relief can be granted from the facts provided by the Plaintiff for Abuse of Process and Civil Conspiracy. He submits to the sound discretion of this Honorable in its determination of that issue.

Finally and respectfully, Plaintiff points out the Louisiana Appellate Court Opinion, which singled out the Plaintiff in his personal capacity for publications to the Slabbed New Media LLC website, setting a Louisiana precedent in the process, does not comport to the most basic press protections found in *Near v. Minnesota*, 283 U.S. 697 (1931) and *Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976) against prior restraints on free speech and journalism in the public interest. This Court can insure the rule of law prevails over a state sanctioned reign of retaliation against a public interest journalist involving state actors carrying out a nefarious, pecuniary private purpose in the dark of night under a court seal which clearly is meant to apply to only one party in the litigation.[7]

---

[7] Yount, along with the Loyola University defendants recently filed substantial parts of the underlying sealed Louisiana Litigation in another open proceeding in the Jefferson Parish courts not involving Plaintiff in direct violation of the seal they improperly obtained, via ex-parte order that was devoid of any semblance of procedural due process, from the Jefferson Parish 24th Judicial District Court.

Should this court dismiss Plaintiff's First Amended Complaint under Fed. Rule Civ. Proc. 12(b)(2) or (6), Plaintiff respectfully requests that the claims be dismissed with leave to amend, so that he may better articulate the claims of Misrepresentations under 17 U.S.C. § 512 and the Abuse of that Process for an ulterior reason that has resulted in damages to the Plaintiff including deprivation of his valuable civil rights.

Respectfully submitted this 26th day of June, 2015,

Douglas Handshoe, Pro Se
Post Office Box 788
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

11

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, hereby certify that on June 26, 2015 the foregoing was sent for electronically filing by me via the Clerk of the Court using the ECF system which sent notification of such filing to the following ECF participants:

> Edward Hatten (MSB #8859)
> Bradley Dean (MSB #101161)
> Dukes, Dukes, Keating and Faneca, P.A.
> Post Office Drawer W
> Gulfport, MS 39502
> Phone: (228) 868-1111
> Fax: (228) 863-2886
> ed@ddkf.com
> bdean@ddkf.com
> Attorneys For Ramona Fernandez, Janey Lamar and Loyola University New Orleans

I, Douglas Handshoe, certify I have sent a true and correct copy of the foregoing to the following via United States Mail:

> Daniel G. Abel
> Pro Se
> C/O The Super 8 Motel / Desai Enterprises
> 2421 Clearview Parkway, Room 106
> Metairie, LA 70001

> Chris Yount
> Pro Se
> 545 Terrace Street
> Jefferson, LA 70121

Respectfully submitted this 26th day of June, 2015,

_____

Douglas Handshoe, Pro Se
Post Office Box 788
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com