

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

FEB - 4 2016

ARTHUR JOHNSTON
BY_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

DOUGLAS HANDSHOE                                            PLAINTIFF

v.                                       CIVIL ACTION NO. 1:14-CV-159-KS-MTP

DANIEL G. "DANNY" ABEL
CHRIS YOUNT, RAMONA FERNANDEZ,
JANEY LAMAR and
STUART SMITH LAW CLINIC
d/b/a LOYOLA UNIVERSITY NEW ORLEANS                DEFENDANTS

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

**DEFENDANT CHRIS YOUNT'S REBUTTAL TO
DOUGLAS HANDSHOE'S OPPOSITION**

**Background**

At the outset, the context out of which Plaintiff brought this suit is extremely important to

emphasize. Defendant also points out that Mr. Handshoe makes numerous conclusory allegations

but has filed no evidence whatsoever and has cited no supporting case law.

As to the background, first, Mr. Handshoe in his amended complaint admits that his blog

post featuring Mr. Yount's son's sexually explicit drawing was entitled "Very disturbing child

welfare issues raised in 24th JDC case" and states that the drawing was a "disturbing image" that

represented "a cry for help from a child failed by the Jefferson Parish court system." Mr.

Handshoe has elsewhere published both in this case and on his blog that the drawing showed a

male minor child being sodomized by "a line of gay robots."

However, as made clear by a decision of the Louisiana 5th Circuit Court of Appeal

rendered during the pendency of this litigation, in fact the drawing was a private matter, and

there were no issues of sodomy, child welfare, a "cry for help," or a child failed by the Louisiana

judicial system raised in that 24th JDC proceeding. All of these purported sensational issues

related to the drawing belonging to Mr. Yount's son were simply made up out of thin air by Mr.

Handshoe as "click bait" --to use the words of the Louisiana 5th Circuit Court of Appeal--for his commercial blog.

> Mr. Handshoe's second argument is contradicted by the facts alleged in the petition. While the drawing was under seal, it was not publically available information. Mr. Handshoe confuses the public right of access to judicial proceedings with the right to free speech and petition. All of these rights are protected under the Constitutions of the United States and Louisiana, by the express language of the statute, but only actions arising under the latter rights are protected by an Article 971 motion. While information may be made available to the public for purposes of ensuring fairness in our judicial proceedings, there may be legal consequences should that same information be published and distributed as clickbait to millions of people on the internet in a manner that defames or invades the privacy of another. "The right to inspect judicial records should not trump the individual's privacy rights, especially where the purpose is to gratify spite, promote public scandal, or to publicize the embarrassing details of a divorce case." *Copeland v. Copeland,* 07-0177 (La. 10/16/07), 966 So.2d 1040, 1052.   ***Yount v. Handshoe,*** 171 So. 3d 381 (La. Ct. App. 2015).

In reality, Mr. Yount has sole custody of the minor child, and a court psychiatrist determined the drawing in question actually showed the talent of the minor child, and that it was a perfectly normal drawing for a person of his age. Sodomy or mistreatment of the child was never an issue before the court. However, Mr. Handshoe did not publish these facts, and invented ones to support his vengeful purpose.

Indeed, the Handshoe publications at the heart of this lawsuit beg the question—relevant here-- as to why Mr. Handshoe was delving into Mr. Yount's divorce file in another state so he could publish on slabbed.org, knowing that it would likely produce a legal response from Defendant?

It is uncontested background to this proceeding that process server Mr. Yount's only contact with Mr. Handshoe before his son's drawing was published on Slabbed was as a process server, including serving federal process in this jurisdiction in Abel v. Handshoe et. al. (Cf. *Abel v. Handshoe,* Civil Action No. 13-88 (E.D. La. May 20, 2013).

There is strong public policy and law in the United States favoring the protection of

process servers from abuse or coercion by those being served; one salient reason is that they are indispensable witnesses. This strong public policy is memorialized in 18 U.S.C. § 1501 ("Assault on process server") as well as 18 U.S.C. § 1503 (in certain jurisdictions), cf. United States v. Schaffner, 715 F.2d 1099 (6th Cir. 1983). Widespread, Internet publication of false words that harm another's reputation and cause other injury is a type of personal injury consisting of damage to reputation, but also "personal humiliation, and mental anguish and suffering" Time, Inc. v. Firestone, 424 U.S. 448, 96 S. Ct. 958, 47 L. Ed. 2D 154 (1976).

Any reasonable person can infer from the facts of the present case that Bay St. Louis, Mississippi-resident Mr. Handshoe's intentional actions in delving into Mr. Yount's Jefferson Parish, Louisiana divorce proceeding to look for potentially embarrassing or injurious material in the 24th Judicial District file for publication on "Slabbed" was designed as illegal and reprehensible payback and future deterrent for serving him with civil process or testifying, acts that are protected by federal law. Interference with a process server and a witness is an obstruction of justice. By definition, an attempt to cow and punish a process server by making public his private life & fabricating false details about his private life is not in the public interest, quite the opposite.

### Plaintiff's Rebuttal Brief

Plaintiff's rebuttal brief fails to address that Defendant Yount did not seek return of the amount paid to Mr. Handshoe under Federal Rule of Civil Procedure 54, but rather as part of Mr. Yount's motion regarding the frivolous, baseless, and vexatious nature of Mr. Handshoe's conduct in this case, in other lawsuits he filed in this district court, in other lawsuits filed in this jurisdiction, and in Louisiana cases where Mr. Handshoe is a defendant. Along with this rebuttal brief, Defendant is also filing a Bill of Costs under L.U.CIV.R 54(c).

But the issue in this motion is that Mr. Handshoe is an unrepentant conspiracy theorist, who has taken his "campaign" to damage, harass, and embarrass those associated with Trout Point Lodge from the pages of his blog and into the courts (cf. Trout Point Lodge v. Handshoe Case 1:12-cv-00090-LG-JMR Document 35 Filed 12/19/12 and also Manzo, N. "If You Don't Have Anything Nice to Say, Say It Anyway: Libel Tourism and the SPEECH Act" 20 Roger Williams U. L. Rev. 152 (2015)).[1]

His conduct is deserving of sanctions, and this Court is not bound solely by Federal Rule of Civil Procedure 11.

> When counsel and their clients are offended by the lack of due diligence and the lack of good faith in which counsel opposite litigates a case, they may seek relief from the official presiding over the matter under the governing rules. *See, e.g.* Rules 11 & 37 of the Mississippi Rules of Civil Procedure and Federal Rules of Civil Procedure. *See also,* Miss Code Ann. § 11-55-5(1) (Rev. 2002) (**Litigation Accountability Act** of 1988 allows for court to award reasonable attorney's fees and costs against any party or attorney defenses are assert [sic] without substantial justification). In addition, a party may even request a court to invoke its inherent authority to deal with attorneys who engage in bad faith conduct negatively affecting the administration of justice. Lastly, even where a party does not request relief, courts may invoke its [sic] inherent authority *sua sponte* where it is evident that an attorney is acting in bad faith or abusing the litigation process. *See, e.g., Collins v. Koppers, Inc.,* 59 So.3d 582 (Miss.2011) (court raised on its own motion the **Litigation Accountability Act** of 1988 noting that "`[i]f sanctions are not appropriate and

---

[1] That journal article succinctly described the background to the 2012 SPEECH Act proceeding (internal footnotes removed): The defendant, Doug Handshoe, owns and operates a political blog from Mississippi called Slabbed.org. Handshoe is a United States citizen and is domiciled in Mississippi. His blog often discussed a Louisiana bribery scandal involving a man by the name of Aaron Broussard. Broussard owned property in Nova Scotia, Canada, which was located in close vicinity to Trout Point Lodge, a hotel and wilderness resort. Handshoe alleged that the owners of the lodge, Vaughn Perret and Charles Leary, were involved in the Louisiana bribery scandal. As a result, the *Times-Picayune,* a newspaper in New Orleans, claimed that Broussard owned an interest in Trout Point Lodge. Perret and Leary contacted the *Times-Picayune* and alerted the paper to the "factual errors in [its] reporting." The newspaper redacted the earlier statements and issued a correction. In addition, the corporate parent of the newspaper removed Handshoe's blog from the Internet. In response, Handshoe relaunched his blog on a different hosting website and "began an internet campaign to damage Perret and Leary." In sum, the statements claimed that the lodge owners were connected to the Louisiana scandal, had misled investigations by Canadian officials, and engaged in fraud, which was leading to corporate bankruptcy, and homosexual conduct. Frustrated by the "derogatory, mean spirited, sexist, and homophobic" statements, the lodge owners brought a defamation suit against Handshoe in Nova Scotia.

justified in this case, then this court can conceive of no circumstances under which sanctions would ever be warranted.'"). *Dandridge v. Tyson Foods, Inc.*, 823 F. Supp. 2d 447 (S.D. Miss. 2011).

Plaintiff remains recalcitrant in the face of this district court's direction, the Federal Rules of Civil Procedure, and common civility & decency, within this proceeding, within this district court, and within the world of civil society. With court filings as well as on his blog, Plaintiff uses bullying strategies and demonstrates intentional and flagrant disregard for the limits of "free speech" (defamation) and for third party's intellectual property rights (infringing copyright). This has resulted in him being sued by multiple persons in various "unrelated litigations" cf. *Yount v. Handshoe*, 171 So. 3d 381 (La. Ct. App. 2015); there is no "conspiracy," simply many people he has targeted for attack on his blog. His answer to the fact that his own blogging and his own unfounded lawsuits have placed him on the receiving end of damage awards and attorney's fee awards, has been to groundlessly sue his opponents—real and imaginary—in this district court and in state court for the purpose of coercing his opponents into dropping their legal pursuits.

In the course of doing so, Mr. Handshoe is not afraid of making a mockery of this district court's belief in his *bona fides*. He has repeatedly made the faith that the Honorable Judges of this Court have placed in him into a laughing stock:

| Case No. | Court Opinion | Later Action by Handshoe |
|---|---|---|
| 1:13-CV-251-LG-JMR | "The Court is not persuaded the defendants' arguments that Handshoe may later seek damages exceeding $75,000." Case remanded (see below). | Handshoe later amends his state court complaint (without permission of the court) to claim $817,000 in damages and for the trebling of that amount according to the law, as well as punitive damages. |

| | | |
|---|---|---|
| 1:14-cv-00241-LG-JCG | "Given the scarcity of case law discussing removal under the 2010 SPEECH Act, including what qualifies as a removable judgment for defamation under the Act, the Court cannot say that Defendant lacked an objectively reasonable basis for removal." No costs or fees for improper removal awarded. | Handshoe later removes to the same district court the enrolment of the self-same Canadian money judgment for copyright infringement under the same SPEECH Act argument for a second time ignoring the principle of *res judicata*. Case no. 1:2016-cv-00007. |
| 1:14-cv-00159-KS-MTP | "Plaintiff submitted a signed, sworn Affidavit [75-1] representing that his damages in this action amounted to $75,000. In doing so, Plaintiff represented by implication that this amount was calculated based on the total amount of damages which he incurred and to which he was entitled under law." | Handshoe subsequently choses to simply change the amount claimed in controversy in a subsequent pleading, with no evidence, a move rejected by the Court. |
| 1:14-cv-00159-KS-MTP | "Plaintiff is warned that the proper avenue for adding such claims and parties is through a motion for the Court's leave or with opposing party's written consent pursuant to Federal Rule of Civil Procedure 15(a)(2)." | Two weeks later, in case no. 1:2015-cv-00382 Handshoe files a 2nd Amended Complaint for Damages without permission of the court or the parties, and in violation of FRCP 15(a)(2), causing Judge Ozerden to *sua sponte* strike the complaint. |
| 1:14-cv-00159-KS-MTP | "Defendant states that Plaintiff identified a minor in his Complaint. Defendant, however, does not refer the Court to any specific portion of the Complaint where a minor is identified, and the Court, having reviewed the Complaint, did not find the name of a minor." | More than a year later, Handshoe files a 2nd Amended Complaint for Damages and a Rebuttal Brief in the same case repeatedly naming the minor child, and also republishes the minor child's drawing on the Internet while this court is deliberating his 17 USC 512(f) claim. |

Beyond his disrespect for the Court, Plaintiff attempts to harass and delay, drawing multiple parties together via meritless conspiracy theories. He is vexatious in several ways:

- His lawsuits generally have no hope of success and are merely designed to vex his targets;

- he repeatedly disobeys orders and directions of this court and fails to heed the Federal Rules of Civil Procedure, the procedures of federal bankruptcy court, and the Mississippi civil procedure rules (particularly regarding amendment);
- he has demonstrably made more than one intentional misrepresentation to this district court in affidavits or signed pleadings;
- he persists in threatening new litigation over the same basic issues already dismissed, and persists with his conspiracy theory, including filing multiple lawsuits against the same parties where he literally alleges "conspiracy";
- he has now twice publicly exposed the name of my minor child in court filings in the context of a pornographic drawing and allegations of sexual abuse in direct contravention of Fed. R. Civ. P. 5.2, while at the same time republishing on December 4, 2015, the drawing at the heart of this lawsuit despite its being sealed by the Louisiana court.

In the face of the fact that this Honorable Court dismissed plaintiff's attempt to further weave his conspiracy in this proceeding via his 2nd Amended Complaint for Damages, Plaintiff persists in captioning his brief with the names of not only Daniel Abel, but also non defendants Charles Leary, Vaughan Perret, and instant Defendant "as Guardian of XXXXXX XXXXX" (name omitted). More egregiously, Plaintiff uses his "Memorandum in Opposition" to once again publicly hurl conclusory allegations based on his conspiracy theories as pleaded in the 2nd Amended Complaint already dismissed by this Court.

### Plaintiff Used This Proceeding to Delay & Harass; His Lawsuit Had No Hope of Success from the Outset

Plaintiff's rebuttal brief also fails to address the history of his litigation in this proceeding and in this district court as raised by Defendant's brief. Instead, Plaintiff again weaves his conspiracy theory as he did in the already dismissed portions of his 2nd Amended Complaint for Damages.

The sole basis for bringing Plaintiff's purported case to federal court was alleged violation of 17 USC 512(f), part of the Digital Millennium Copyright Act (DMCA), which cause of action has been dismissed with prejudice. The Plaintiff is well educated and well versed in legal procedure. It is undisputed that he is a Certified Public Accountant, and has been involved in

litigations dating back years and decades (see Exhibit "B" to Defendant's original brief and In Re: Truck Stop Gaming, Limited, U.S. Bankruptcy Court, Western District of Louisiana No. 97-51069).

This Honorable Court has already made certain salient findings based solely on Plaintiff's own pleadings, making the obviousness of the patent unviability of his action all the more glaring:

- Plaintiff filed suit for alleged abuse of process and malicious prosecution involving the process of Louisiana courts, not only against Mr. Yount, but also lawyers and law students a Louisiana court appointed to safeguard the interests of my minor child. This court had no jurisdiction over such claims; and this was obvious from the outset to Plaintiff; "the only element of Plaintiff's malicious prosecution claim that could have occurred in Mississippi is the damages elements for litigation expenses incurred. Similarly, the only element of his abuse of process claim for the appellant brief that could have occurred in Mississippi is the damages element for litigation expenses. These would be purely economic consequences, though, which are not enough to confer personal jurisdiction under Mississippi law."

- Plaintiff also filed suit for alleged abuse of process involving the emailing of a court order from Louisiana's 24th Judicial District Court to Plaintiff's web host in Texas, as well as for alleged violation of 17 USC 512(f). However in Plaintiff's own words, "it was only DMCA takedown notice which caused Plaintiff's posts to be disabled. (See id. at ¶ 18 ("But for those misrepresentations [in the DMCA takedown notice], HostGator.com LLC would not have disabled access to the posts containing the media identified in the notice.").)" This was obvious to Plaintiff from the outset of litigation as no injury resulted from the alleged abuse.

- At all relevant times, Plaintiff failed to properly plead a violation of 17 USC 512(f), which was the sole basis for federal jurisdiction, and he demonstrated, as found by this Court, "a plain misunderstanding of copyright law" involving the most basic concepts of copyright ownership and the rights entailed therein. "By that fact alone, the minor child possesses a copyright in the drawing under 17 U.S.C. § 102(a)(5). Plaintiff does not allege in his complaint that his use of the drawing was authorized by either the copyright owner or law, and asserts only that a copyright does not exist." Mr. Handshoe has always known the drawing did not belong to him, he had no right to use it, and that his misrepresentation claim was frivolous.

- When given a chance by this Court to amend his pleading to cure defects regarding the pleading of a 17 USC 512(f) violation, Plaintiff again failed, Defendant again submits, because his claim was frivolous from the get go. He again asserted a totally baseless reason for bringing the lawsuit: "From the Court's reading of the Amended Complaint [80], it appears that Plaintiff is claiming that, because the image appears in an unsealed

and public court document, the image has entered the public domain and therefore no copyright protection exists. However, a copyrighted work does not lose its copyright protection simply because it is easily available to the public."

All of this points to the fact that Mr. Handshoe never had any basis for filing his lawsuit, especially in this U.S. District Court, and it never had any chance for success. The abuse of process and malicious prosecution claims involving ongoing litigation in Louisiana were on their face not amenable to the jurisdiction of this Court. The abuse of process claim regarding showing the court order to the web host was also baseless from the beginning, as no damage flowed from it, to use the Plaintiff's own version of the facts. In fact, if any party to this dispute is guilty of abuse of process, it is Mr. Handshoe.

The claim under 17 USC 512(f) was also baseless from the beginning, as this Court's own findings rely on Plaintiff's own pleadings—he himself pleaded the facts demonstrating that there was no misrepresentation under the DMCA. Defendant submits the only reason for pleading a violation of 512(f) was to try to bring his frivolous claims in this court in order to cost his opponents time, energy, and resources, and to dissuade them from prosecuting their own cases against Mr. Handshoe. No better evidence of this exists than Mr. Handshoe's coercive email provided as an exhibit to my original brief in this motion, which Mr. Handshoe fails to explain away in his response—that email was not a good faith attempt to settle, far from it.

In addition, Plaintiff never had any hope of success in this case for other reasons.

There is no hope of success when a defendant has a complete defense to the claim, such as the bar of a statute of limitations, *Tricon Metals & Servs., Inc. v. Topp*, 537 So.2d 1331 (Miss.1989), or when the bar of collateral estoppel applies. *Richardson v. Audubon Ins. Co.*, 948 So.2d 445 (Miss.2006). Sanctions under the MLAA have been awarded when, following a dismissal of the original complaint for failure to state a cause of action, a plaintiff filed an amended complaint making essentially identical allegations against the same defendants. *Triplett v. Brunt-Ward Chevrolet, Oldsmobile, Pontiac, Buick, Cadillac, GMC Trucks, Inc.*, 812 So.2d 1061 (Miss.2001).    *Abney v. State Farm Fire and Casualty Company*, Civil Action No. 1: 07CV711 LTS-RHW (S.D. Miss. June 4, 2008).

-9-

First, Plaintiff filed his complaint *after* filing responses in Louisiana civil actions when he had clearly submitted to the jurisdiction of the Louisiana courts. Plaintiff thus created unnecessary and vexatious litigation in this Court based on his knowingly baseless 17 USC 512(f) claim. The Louisiana Code of Civil Procedure has a rule, based on Federal Rule of Civil Procedure 13(a), that requires a defendant to make compulsory reconventional demands. It is common ground that Mr. Yount sued Mr. Handshoe in the 24th Judicial District Court in March, 2014, *before* Handshoe filed this lawsuit.

La. CCP Art. 1061 **"Actions pleaded in reconventional demand; compulsory:"** states: "The defendant in the principal action, except in an action for divorce under Civil Code Article 102 or 103 or in an action under Civil Code Article 186, shall assert in a reconventional demand all causes of action that he may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action" (emphasis added).

The Louisiana court had subject matter jurisdiction over Mr. Handshoe's instant abuse of process & malicious prosecution claims as of March, 2014. Mr. Handshoe was required to bring the abuse of process and malicious prosecution claims at issue in this proceeding in the Yount v. Handshoe case, which he failed to do. The same may also be said for other claims in other Handshoe lawsuits of the action pending in New Orleans Civil District Court, Abel v. Handshoe, et al, which was filed in 2013.

A cause of action for abuse of process and malicious prosecution was available to him in Louisiana when he filed his complaint here, cf. *Melius v. Keiffer*, 980 So. 2d 167 (La. Ct. App. 2008). As the decision of the Louisiana Fifth Circuit Court of Appeal in Yount v. Handshoe (Exhibit "A" to this brief) makes clear, the alleged abuse of process involving the 24th Judicial District Court Order arose out of the transaction or occurrence that is the subject matter of Mr.

Yount's action against Mr. Handshoe. Indeed it was the process of that very court that was allegedly abused in a way intimately connected to the facts regarding Mr. Handshoe publishing about Mr. Yount and his minor son on Slabbed.org. The validity of the Louisiana court's subject matter and personal jurisdiction over this matter and Mr. Handshoe is not in question, and that jurisdiction had been in effect since March, 2014.

When a "federal court "is asked to give *res judicata* effect to a state court judgment, it must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1509 (11th Cir. 1985) (quotation marks omitted) (citing *Hernandez v. City of Lafayette,* 699 F.2d 734, 736 (5th Cir. 1983))" (*Petillo v. WORLD SAVINGS BANK, FSB,* No. 6: 08-cv-1255-Orl-19GJK (M.D. Fla. Nov. 10, 2009)).

In *Hy-Octane Investments, Ltd. v. G & B OIL PROD., INC.,* 702 So. 2d 1057 (La. Ct. App. 1997), two lawsuits involving the same parties were pending in Louisiana courts. That court looked to Federal Rules of Civil Procedure 13(a) for guidance on the issues before it, explaining "When an article of the Louisiana Code of Civil Procedure is based on a federal rule, decisions of the federal courts can be used for guidance." It also explained the change in Louisiana law effected in 1991:

> The doctrine of *res judicata* was substantially changed by La. Acts 1990, No. 521, effective January 1, 1991. Several code articles were amended in order to effectuate this change. Article 1061 was one of the articles that was amended. The purpose of the change in the doctrine of *res judicata* was to require the plaintiff "to seek all relief and to assert all rights which arise out of the same transaction or occurrence." Comment (a) to La.R.S. 13:4231. This serves the purpose of judicial economy and fairness. The focus is on the transaction or occurrence as opposed to a cause of action. See Comment (a) to La.R.S. 13:4231.
>
> In furtherance of this objective, judicial efficiency is also served "by requiring the defendant through a compulsory reconventional demand to assert all causes of action he may have against the plaintiff that arise out of the transaction or occurrence that is the basis for the plaintiff's action." Comment (a) to Article 1061.

That court made absolutely clear that when there are two pending actions arising out of the same transaction or occurrence, the case first filed takes subject matter jurisdiction.

> G & B was the first to file suit in this case. The suit was filed in Rapides Parish. G & B alleges that pursuant to La.Code Civ.P. art. 1061, Hy-Octane had to file its claim for breach of the agreement as a compulsory reconventional demand in the Rapides Parish suit. We agree, and we will grant this writ application.

The court dismissed the second action.

Accordingly, subject matter jurisdiction over the abuse of process claim at issue here always lay with the Louisiana 24th Judicial District Court, and not with this Court. The matter was res judicata from the outset. Mr. Handshoe's claims other than under 17 USC 512(f) thus never had any hope of success here, and his filing of these causes of action in this Honorable Court were frivolous and vexatious.

> The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim "shall" be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint. _Southern Construction Co. v. Pickard,_ 371 U.S. 57, 60, 83 S.Ct. 108, 109, 9 L.Ed.2d 31 (1962)

> To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. _Montana v. United States_, 440 U.S. 147, 99 S. Ct. 970, 59 L. Ed. 2D 210 (1979).

Mr. Handshoe intentionally and vexatiously chose not to make counterclaims in Louisiana, and instead decided to file action in this Court, which he apparently thought was friendly to him. Any compulsory counterclaims that had to be brought in the two Louisiana actions against him, one filed in 2013 and one filed in March, 2014, were _res judicata_ at the time he brought them to this court. His state law claims thus had "no hope of success" and were

vexatious.

In addition, by the time he filed his amended complaint to include his abuse of process claims, they had expired, and thus had no hope of success for another reason. Abuse of process claims "are subject to a one-year limitations period, *see Sullivan v. Boyd Tunica, Inc.*, Civil Action No. 2:06CV016-B-A, 2007 WL 541619, *3 (N.D.Miss. Feb. 16, 2007) (citing *Suthoff v. Yazoo County Indus. Dev. Corp., 722 F.2d 133, 136 (5th Cir.1983))*" ***Harried v. Forman Perry Watkins Krutz & Tardy*, 813 F. Supp. 2d 835 (S.D. Miss. 2011).** The same is true of malicious prosecution claims; "Mississippi's one-year limitations statute for intentional torts" Suthoff, *supra*.

His lawsuit was thus frivolous and vexatious; the only purpose of the lawsuit was to harass those who were already suing him in Louisiana, or were aiding my minor child. And two courts of appeal of that state have already determined that Mr. Handshoe's special motions to strike in those cases should be denied, based on evidence.

### Plaintiffs Makes a Mockery of the Trust This Court Placed In Him Regarding Fed. R. Civ. P. 5.2.

On September 2, 2014, this Court determined (doc. 20) the issue of a previous motion to seal involving Fed R. Civ. P. 5.2. and my minor child. Mr. Handshoe was thus clearly aware of that rule when he filed papers in 2016.

It is undisputed that the background to this case involves Mr. Handshoe taking a drawing authored by Mr. Yount's minor child from Defendant's divorce court file in Louisiana; that drawing was sexually explicit and Mr. Handshoe published falsehoods about it on his blog. The contents of his blogging have been described the Louisiana 5th Circuit Court of Appeal in its fact finding:

This defamation and invasion of privacy case arises from a series of posts and comments authored by Mr. Handshoe and codefendant Jack E. Truitt on www.slabbed.org an internet website owned and operated by Mr. Handshoe and his company, New Slabbed Media, LLC, which reports information on various private and public individuals, entities, and events in the Gulf South region, including southeastern Louisiana and New Orleans. Mr. Yount is a paralegal and process server who had served Mr. Handshoe process in other defamation suits unrelated to the instant case.

On February 13, 2014, Mr. Handshoe published on *www.slabbed.org* a pornographic drawing authored by Mr. Yount's 13-year-old son that had previously been filed with the court as part of Mr. Yount's divorce proceedings in the 24th Judicial District Court. Captions and comments authored by Mr. Handshoe and Mr. Truitt underneath the drawing described its graphic nature and clearly identified the author as a minor child and the divorce proceedings in which he was involved.

Subsequent to this initial publication, the trial judge overseeing the divorce proceedings sealed parts of the record, including the pornographic drawing, and ordered the drawing removed from the internet. Notice of copyright infringement pursuant to the Digital Millennium Copyright Act was sent to the webhost of *www.slabbed.org*, who also provided Mr. Handshoe with a copy of the trial court's order. On February 18, 2014, the blog post containing the drawing as well as the *www.slabbed.org* website was taken down by the webhost in response to the copyright infringement notice and violations of the webhost's terms of service. Mr. Handshoe subsequently found a new webhost, brought the website back online, and republished the posts containing the pornographic drawing. On at least two separate occasions in February and March of 2014 after the evidence had been placed under seal by the court, Mr. Handshoe authored additional posts where he published the drawing together with comments that clearly identified the minor child author and his father.

In his impermissible 2nd Amended Complaint for Damages [80] Mr. Handshoe names Mr. Yount's minor child. In his response brief on this motion [91], Plaintiff names the minor child again. This was intentionally done after this Court denied the motion to seal only because it was not facially apparent that my minor child had been identified by Mr. Handshoe; now the fact of such illegal identification is incontestable. Defendant submits this was an intentional act done as a parting blow to inflict injury on Defendant and his son. Defendant prays that this Court seal these documents.

Congress's ratification of Rule 5.2(a) makes clear its judgment that the interest of minors in privacy is greater than the public's interest in learning their names, even when there is no

particular threat to the juvenile's physical safety or well-being. The Federal Rules of Civil Procedure reflect a public policy of protecting juveniles from the harm that can befall them as a result of disclosing their identities in the course of litigation. Given the sexually-charged nature of Mr. Handshoe's allegation in his pleadings in this case (gay robots sodomizing a male child) and on his blog, harm to the minor's well being is palpable, and this has been recognized by the 24th Judicial District Court and the Court of Appeal in Louisiana, where the drawing and my minor child's name made public by Plaintiff here, remain sealed. Aggravating these circumstances is the fact that one day after this Court dismissed Mr. Handshoe's complaints against Loyola University, Ramona Fernandez, and Janie Lamar—the persons who were court appointed to protect my minor child's interest—Mr. Handshoe republished the pornographic drawing in question onto his blog at slabbed.org (Exhibit "B").

This conduct alone is worthy of sanctions and any other remedies this Court sees fit to impose.

### Plaintiff Repeatedly Fails to Follow Court Direction and the Rules In Order to Vex and Harass His Opponents

On January 8, 2016, this Honorable Court found that Plaintiff exceeded the scope of this Court's order on amendment by "adding claims, parties, and superfluous facts to his Amended Complaint [80]." The Court then stated: "Plaintiff is warned that the proper avenue for adding such claims and parties is through a motion for the Court's leave or with opposing party's written consent pursuant to Federal Rule of Civil Procedure 15(a)(2)." (emphasis added).

Then, a mere two weeks later, on January 22, 2016, Plaintiff filed a 2nd Amended Complaint in this district court in case no. 15-cv-00382 (the National Geographic "conspiracy" case). As Judge Ozerden summarized:

Plaintiff has impermissibly filed a Second Amended Complaint, without obtaining the

opposing parties' consent or this Court's authorization. See Fed. R. Civ. P. 15(a)(1)-(2). Because Plaintiff had already filed one amended pleading as a matter of course, Plaintiff was not permitted to do so again without either opposing parties' consent or leave of Court. See id.

Judge Ozerden *sua sponte* dismissed the 2nd Amended Complaint, but acted before he could consider the motion to strike of Defendant Torstar Corporation (Toronto Star newspaper), which pointed out this Court's warning to Plaintiff contained in Its January 8, 2016 Opinion and Order quoted above.

What's more, in late 2013, Judge Guirola likewise warned in a published opinion: "Defendant Handshoe and his counsel are admonished . . . to adhere to the Federal Rules of Civil Procedure in the future, so that the parties and the Court will not expend resources on avoidable disputes such as this one." *TROUT POINT LODGE LIMITED v. Handshoe*, Cause No. 1: 12CV90-LG-JMR (S.D. Miss. Dec. 11, 2013).

Notably, Plaintiff also amended a pending state court complaint, also without permission, and in violation of Mississippi rules (see below) at the same time contradicting sworn assertions made to this district court in an affidavit regarding the amount in controversy on remand.

Thus there are three concrete examples on Mississippi court dockets of Mr. Handshoe totally ignoring court direction and the rules of civil procedure to impermissibly amend three different legal complaints; this shows a complete lack of respect for the rules of court, and for This Court's orders.

There's more. Torstar Corporation (Toronto Star newspaper) was also a defendant in this district court in case no 15-cv-00113 brought by Plaintiff, which was dismissed by this district court on December 4, 2015 for lack of personal jurisdiction. Before that dismissal occurred, however, Plaintiff sued Torstar Corporation a second time in this Court in case no. 15-cv-00382, creating an unnecessary multiplicity of litigation. He filed that "conspiracy" and 17 USC 512(f)

lawsuit against Torstar, National Geographic Society, and others on November 16, 2015. had Mr. Handshoe brought his 512(f) claims against Torstar in 15-cv-00113 it might have altered the court's jurisdiction determination; however that was obviously not Mr. Handshoe's purpose; his purpose is simply to harass.

Notably, that newest federal lawsuit involves the same issues as the instant case: alleged "misrepresentation" under 17 USC 512(f). Allegations include that the National Geographic Society made intentional misrepresentations in a copyright takedown notice regarding an unauthorized publication of its copyrighted photograph of Charles Leary on slabbed.org. And moreover, Plaintiff alleges that National Geographic and the Toronto Star were part of a large international conspiracy to silence him and damage his "free speech" rights. Defendant submits that as in this case, Mr. Handshoe is simply using 17 USC 512(f) as a club, a strategy of harassment, based on his intentional refusal to recognize the validity of intellectual property rights in photographs or drawings others choose to publicly distribute via the Internet, as this Court rightly found in this case. See also *Agence France Presse v. Morel*, **2013 WL 146035 at *58 (S.D.N.Y. Jan. 14, 2013)**. In Mr. Handshoe's world, he is the only one to have rights, and this includes a completely unfettered right to "free speech" which involves violating third party's property rights (and more).

The facts in the **Morel** case, *supra*, this case, and the National Geographic case are structurally similar, involving the illegal taking of online images, the lack of any "fair use", and a failure to cease & desist publication and distribution once notice was given. As effectively summarized in in the Social Media Law Bulletin (http://www.socialmedialawbulletin.com/2014/10/agence-france-presse-v-morel-third-update/):

> [P]hotographer Daniel Morel posted some photographs on Twitter. Agence France Presse ("AFP") copied eight of those photos, and provided them to Getty Images (US), Inc.

("Getty"), which then distributed the works to various infringing third parties. Getty continued to distribute the photographs, despite receiving a "kill notice" from AFP on the photos, and in 2010 Morel brought suit against AFP and Getty (as well as other news agencies). On motion for summary judgment, the court held the defendants liable for copyright infringement. After appeal, the case reverted back to the District Court, and a federal jury ruled that AFP and Getty were liable for, and thus ordered to pay Morel, statutory damages in the amount of $150,000 per photo, for a total of $1.2 million, the maximum statutory penalty available to Morel under the Copyright Act. *Agence France Presse v. Morel*, Civil No. 10-02730 (S.D.N.Y. Nov. 22, 2013).

Mr Handshoe intentionally ignores the basic principle enunciated by this Court and the Morel court: that one cannot take photographs or drawings belonging to others and use them for commercial purposes just because one found them on the Internet. This is, with respect, not a "misunderstanding," but rather an intentional strategy perpetrated by the Plaintiff, and for which he should be punished.

### Threats of Creating More Litigation

On December 4, 2015, Mr. Handshoe republished my son's drawing on slabbed.org without permission, and during the pendency of this litigation (Exhibit "B"), and in the face of the Louisiana court's sealing order. One week later he took default against Daniel Abel, and also sent an email threatening further litigation if instant Defendant did not immediately drop his Louisiana action against Plaintiff, including the attorney's fee award ordered by the 5th Circuit Court of Appeal (Exhibit "A"), the amount of which has yet to be determined (due to the purported Chapter 11 bankruptcy of "Slabbed New Media").

Mr. Handshoe then impermissibly amended his complaint to add new parties, including naming my son, and frivolous claims.

Remarkably, in the National Geographic case, Mr. Handshoe also sent an email to Toronto Star attorneys threatening further litigation (see **1:15-cv-00382-HSO-JCG** Handshoe v. Perret et al document 22(1) Exhibit "A" (E-mail from Douglas Handshoe dated January 25,

2016)). "I will absolutely bring additional 512(f) actions against Torstar for each takedown notice they authorize Trout Point to submit to Slabbed New Media's web hosting providers."

Then, in his response brief on this motion, Mr. Handshoe makes threats of still more litigation against instant Defendant and Mr. Abel involving the same legal issue already dismissed with prejudice by this Court after he had republished the minor child's drawing on Slabbed: violation of 17 USC 512(f) in rightful DMCA notices: "he is putting both Mr. Yount and Mr. Abel on notice that Plaintiff will absolutely assert claims against them should they contact or submit another DMCA Takedown notice to Plaintiff's company's web host." This issue related to misrepresenting Mr. Handshoe's illegal publication of this drawing is *res judicata*, and Mr. Handshoe appears to be snubbing his nose at the finality of this Court's decision.

Defendant submits that such threats as proven here show Mr. Handshoe will continue to needlessly multiply litigation unless checked by this Court.

### Bankruptcy

Mr. Handshoe is also not above making misuse of bankruptcy law in this district. The day after his motion for reconsideration to the Louisiana 5th Circuit Court of Appeal was rejected by that Court, Mr. Handshoe placed his sole proprietor limited liability company into Chapter 11 bankruptcy. Mr. Handshoe did not list himself among the creditors of Slabbed New Media, LLC. He then filed a motion with the 24th Judicial District Court and that case against him was automatically stayed while he proceeded to prosecute the instant case. His LLC earns less than $1000 in profits each year. Yet in October of 2015, despite not listing himself as a creditor as required by the rules, Mr. Handshoe filed papers with the court claiming that Slabbed New Media owes him $500,000. He has still not filed a plan for reorganization and "loaned" Slabbed

-19-

New Media over $11,000 to pay the bankruptcy attorney.

## Plaintiff's Misrepresentations to This District Court

Defendant closes this rebuttal brief with two examples of intentional misrepresentations made by Mr. Handshoe to this court, deserving of sanctions.

> The first is already well known.
>
> Plaintiff submitted a signed, sworn Affidavit [75-1] representing that his damages in this action amounted to $75,000. In doing so, Plaintiff represented by implication that this amount was calculated based on the total amount of damages which he incurred and to which he was entitled under law. Plaintiff's argument now amounts to an admission that he previously made false representations concerning his damages to the Court and that, in doing so, willingly forewent an additional potential award of about $40,000 from Abel in default judgment.

Had the second instance been known to this Court when it rendered Its decision, perhaps Your Honor would not have been so lenient with Mr. Handshoe.

Indeed, this case is not the first time Mr. Handshoe has misrepresented jurisdictional amounts in this district court.

In 2013, Mr. Handshoe had sued Defendant Yount, Defendant Abel, Charles Leary, Vaughn Perret, Trout Point Lodge, and others in Hancock County Circuit Court. That case was removed by the defendants to this Court.

Judge Guirola was considering diversity jurisdiction. With an affidavit, Handshoe convinced the Court to remand the case back to state court. Judge Guirola found (*Handshoe v. Broussard*, Cause No. 1: 13CV251-LG-JMR (S.D. Miss. Sept. 23, 2013)):

> The defendants filed briefs asking the Court to construe Handshoe's Complaint in a manner that would demand punitive damages, seek the dismissal of lawsuits pending in other jurisdictions, and request that the Canadian judgment be overturned. The defendants argue that the Court should add the value of the Canadian judgment and other lawsuits filed by the defendants against Handshoe to the amount in controversy claimed by Handshoe. The defendants also rely on the fact that Handshoe is

demanding approximately $55,000 in attorneys' fees pursuant to the SPEECH Act in the *Handshoe I* lawsuit. Certain defendants also accuse Handshoe of fraudulently asserting that the amount in controversy is less than $75,000.

The Court is not persuaded the defendants' arguments that Handshoe may later seek damages exceeding $75,000. Handshoe's Complaint makes no reference to punitive damages, and in affidavits filed one month after removal of the case to this Court, Handshoe stated that his damages totaled $25,000. (*Handshoe* II, ECF Nos. 19-1, 20-1, 24-1). In his brief concerning subject matter jurisdiction, Handshoe itemized those damages and specifically stated that the damages he sought at the time of removal totaled $25,000. <u>He also submitted an affidavit in which he specifically disavowed his right to recover any damages in excess of $74,999.99 in this lawsuit.</u> The defendants have not provided the Court with any evidence that disputes the amount of damages claimed by Handshoe. (emphasis added).

In October of 2014, Handshoe made a mockery of Judge Guirola's reliance on his statements and affidavit, and amended his remanded Hancock County lawsuit to allege everything Judge Guirola had found he would not ask for based on his previous sworn testimony. This included damages "in the amount of $817,000, to be trebled according to the law and for all other damages including punitive, exemplary and other damages related to the other torts herein alleged . . ." (Exhibit "C").

If the plaintiff later attempts to amend the complaint to seek damages in excess of $75,000, exclusive of interest and costs, this Court may entertain removal under <u>Tedford v. Warner-Lambert Co., 327 F.3d 423, 428-29 (5th Cir. 2003)</u>. See also <u>Lee v. State Farm Mutual Automobile Ins. Co., 360 F. Supp. 2d 825, 832-33 (S.D. Miss. 2005)</u> (stating that under Mississippi rules a plaintiff may amend as late as the close of evidence at trial, however "the Court presumes that the state trial judge would prohibit such an amendment as it would be allowing the Plaintiff to perpetrate a fraud on this Court"). *Lewis v. CHARLEY CARRIERS, INC.*, Civil Action No. 5: 09-CV-170-DCB (S.D. Miss. Mar. 31, 2010).

For all of the above reasons, Defendant says that Mr. Handshoe should be subject to sanctions, as deemed appropriate by this Honorable Court; should pay Defendant's costs; and should be declared a vexatious litigant, with any future court filings done only with the permission of a judge.

Respectfully submitted,

Chris E. Yount, Pro Se
545 Terrace Street
Jefferson LA 70121
Email: ceyount@gmail.com

Certificate of Service

I have mailed a copy of this request to
Mr. Handshoe at the address he has given
the Court on Wednesday, 3 February 2016.

**APPENDIX**

Exhibit A: Louisiana 5th Circuit Court of Appeals Judgment of 28 May 2015 against Douglas
Handshoe;

Exhibit B: Drawing done my minor child that is in the record of this case
(See Doc. 1 - Exhibit 1 - Image);

Exhibit C: Douglas Handshoe Amended Complaint in Hancock County Circuit Court; and

Exhibit D: Bill of Costs.