CHRIS E. YOUNT

VERSUS

DOUGLAS K. HANDSHOE,
SLABBED.ORG,
SLABBED NEW MEDIA, LLC AND
JACK E. "BOBBY" TRUITT

NO. 14-CA-919

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 736-680, DIVISION "D"
HONORABLE SCOTT U. SCHLEGEL, JUDGE PRESIDING

COURT OF APPEAL
FIFTH CIRCUIT

MAY 28, 2015

FILED   MAY 28 2015

**ROBERT A. CHAISSON**
**JUDGE**

Cheryl Quirk Landrieu
CLERK

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Robert A. Chaisson


CHRIS E. YOUNT, I.P.P.
   545 Terrace Street
   Jefferson, Louisiana 70121
   PLAINTIFF/APPELLANT

RAMONA FERNANDEZ
   ATTORNEY AT LAW
JANEY LAMAR
   STUDENT PRACTITIONER
   Stuart H. Smith Law Clinic &
   Center for Social Justice
   Loyola Law School
   7214 St. Charles Avenue Campus
   Box 902
   New Orleans, Louisiana 70118
   COUNSEL FOR MINOR CHILD

CONNIE S. MONTGOMERY
   ATTORNEY AT LAW
   1403 West Esplanade Avenue
   Kenner, Louisiana 70065
   COUNSEL FOR DEFENDANT/APPELLEE


**REVERSED AND REMANDED**



EXHIBIT

RAC
∂HW
M88

Plaintiff, Chris E. Yount, appeals the ruling of the trial court granting

defendant Douglas Handshoe's Louisiana Code of Civil Procedure Article 971

special motion to strike and dismissing Mr. Yount's defamation and related claims.

Upon our *de novo* review, and for the reasons discussed herein, we reverse the trial

court's ruling and remand this case for further consideration consistent with our

ruling.

**FACTS & PROCEDURAL HISTORY**

This defamation and invasion of privacy case arises from a series of posts

and comments authored by Mr. Handshoe and codefendant Jack E. Truitt on

*www.slabbed.org*, an internet website owned and operated by Mr. Handshoe and

his company, New Slabbed Media, LLC, which reports information on various

private and public individuals, entities, and events in the Gulf South region,

including southeastern Louisiana and New Orleans.  Mr. Yount is a paralegal and

process server who had served Mr. Handshoe process in other defamation suits unrelated to the instant case.[1]

On February 13, 2014, Mr. Handshoe published on *www.slabbed.org* a pornographic drawing authored by Mr. Yount's 13-year-old son that had previously been filed with the court as part of Mr. Yount's divorce proceedings in the 24th Judicial District Court. Captions and comments authored by Mr. Handshoe and Mr. Truitt underneath the drawing described its graphic nature and clearly identified the author as a minor child and the divorce proceedings in which he was involved.

Subsequent to this initial publication, the trial judge overseeing the divorce proceedings sealed parts of the record, including the pornographic drawing, and ordered the drawing removed from the internet. Notice of copyright infringement pursuant to the Digital Millennium Copyright Act was sent to the webhost of *www.slabbed.org*, who also provided Mr. Handshoe with a copy of the trial court's order. On February 18, 2014, the blog post containing the drawing as well as the *www.slabbed.org* website was taken down by the webhost in response to the copyright infringement notice and violations of the webhost's terms of service. Mr. Handshoe subsequently found a new webhost, brought the website back online, and republished the posts containing the pornographic drawing. On at least two separate occasions in February and March of 2014 after the evidence had been placed under seal by the court, Mr. Handshoe authored additional posts where he published the drawing together with comments that clearly identified the minor child author and his father.

---

[1] At the time of the filing of the petition, Mr. Yount was represented by attorney Daniel Abel in these proceedings and Mr. Yount's divorce proceedings. Mr. Abel, who had previously litigated defamation suits against Mr. Handshoe, has since withdrawn as attorney of record. The trial court in Mr. Yount's divorce proceedings has appointed counsel from the Loyola Law School Stuart H. Smith Law Clinic to represent the interests of the child in the divorce proceedings. Said counsel has appeared before the trial court in the tort proceedings to represent the interests of the child, though not Mr. Yount.

On March 20, 2014, Mr. Yount filed a petition for injunctive relief and damages under seal alleging defamation *per se*, intentional infliction of emotional distress, invasion of privacy, and cyberstalking. In particular, Mr. Yount alleges that Mr. Handshoe's comments constituted defamation *per se* or libel by innuendo by insinuating inappropriate and illegal sexual relations with the minor child. In response to this petition, Mr. Handshoe filed a motion to dismiss on the pleadings and a special motion to strike pursuant to Louisiana Code of Civil Procedure Article 971. Mr. Handshoe argues that his blog posts are substantially true and/or based on reasonable opinion, and that his comments are protected under the First Amendment freedom of speech.[2]

At the motion hearing, the trial court found Mr. Handshoe's blog posts to be acts in furtherance of his right of petition and free speech under the United States and Louisiana Constitutions in connection with a public issue pursuant to the definition of such actions provided in Louisiana Code of Civil Procedure Article 971 (F)(1)(b). The trial court also found that since "public affairs" were involved in this case, there could be no defamation *per se* (citing *Williams v. Nexstar Broadcasting*, 11-887 (La. App. 5 Cir. 04/10/12), 96 So.3d 1195), and, applying the four-part test for defamation set forth in *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418 (La. 07/10/06), 935 So.2d 669, found Mr. Yount unlikely to succeed on his claim for defamation. The trial court then granted Mr. Handshoe's special motion to strike, awarded costs to Mr. Handshoe, and dismissed all of Mr. Yount's claims. Mr. Yount filed this timely appeal.

---

[2] Codefendant Mr. Truitt also filed a special motion to strike pursuant to Louisiana Code of Civil Procedure Article 971; however, that motion is not before us at this time.

**LAW & ANALYSIS**

Mr. Yount argues that the trial court erred in its application of the Article 971 special motion to strike because he is a private figure and the claims arise out of comments made in connection with private rather than public issue. We agree.

The granting of a special motion to strike presents a question of law. Appellate review regarding questions of law is simply a review of whether the trial court was legally correct or legally incorrect. *Lamz v. Wells*, 05-1497 (La. App. 1 Cir. 06/09/06), 938 So.2d 792, 795. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law *de novo* and renders judgment on the record. *Thinkstream, Inc. v. Rubin*, 06-1595 (La. App. 1 Cir. 09/26/07), 971 So.2d 1092.

Louisiana Code of Civil Procedure Article 971 provides in pertinent part:

A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.

B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.

...

C. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.

...

F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:

(1)  "Act in furtherance of a person's right of petition or free speech
under the United States or Louisiana Constitution in connection
with a public issue" includes but is not limited to:
  (a)  Any written or oral statement or writing made before a
legislative, executive, or judicial proceeding, or any other
official proceeding authorized by law.
  (b)  Any written or oral statement or writing made in connection
with an issue under consideration or review by a legislative,
executive, or judicial body, or any other official body
authorized by law.
  (c)  Any written or oral statement or writing made in a place
open to the public or a public forum in connection with an
issue of public interest.
  (d)  Any other conduct in furtherance of the exercise of the
constitutional right of petition or the constitutional right of
free speech in connection with a public issue or an issue of
public interest.

...

In cases of first impression in Louisiana, courts interpreting Article 971

focused on the 'probability of success' factor. *Stern v. Doe*, 01-0914 (La. App. 4

Cir. 12/27/01), 806 So.2d 98; *Lee v. Pennington*, 02-0381 (La. App. 4 Cir.

10/16/02), 830 So.2d 1037. However, courts now interpret the statute as requiring

a two-part burden-shifting analysis. *Thomas v. City of Monroe Louisiana*, 36,526

(La.App. 2 Cir. 12/18/02), 833 So.2d 1282; *Aymond v. Dupree*, 05-1248 (La. App.

3 Cir. 04/12/06), 928 So.2d 721. In cases where speech activities form the basis of

claims, the mover must first establish that the cause of action against him arises

from an act by him in exercise of his right of petition or free speech under the

United States or Louisiana Constitution in connection with a public issue.

*Thinkstream*, 971 So.2d at 1100. If the mover makes a *prima facie* showing his

comments were constitutionally protected and in connection with a public issue,

the burden shifts to the plaintiff to demonstrate a probability of success on the

claim. *Id.* In those cases where more than one claim is alleged in the petition,

courts examine the probability of success of each claim individually. *Darden v.*

*Smith*, 03-1144 (La. App. 3 Cir. 07/01/04), 879 So.2d 390, 397; *Melius v. Keiffer*,

07-0189 (La. App. 4 Cir. 03/12/08), 980 So.2d 167, 172. If the plaintiff can

demonstrate a probability of success on any claim, then the motion must fail.

*Darden, supra.*

        The trial court properly began its application of Article 971 with the first

step of the two-part burden shifting analysis: a determination of whether Mr.

Handshoe's publication of the pornographic drawing constituted an act in

furtherance of his constitutionally protected rights of petition and free speech in

connection with a public issue. In making this determination, the trial court turned

to the four definitional subsections of 971(F)(1) (a) – (d) which provide some

examples of what constitutes an "[a]ct in furtherance of a person's right of petition

or free speech under the United States or Louisiana Constitution in connection with

a public issue." The court held that subsection (a) did not apply because the

comments were made on a blog, not before legislative, executive or judicial

proceedings. The trial court also found that subsections (c) and (d) were

inapplicable because both required the statements to be "in connection with an

issue of public interest" and the issue in this case, a domestic divorce proceeding

between private individuals, did not constitute an issue of public interest. In our *de*

*novo* review of the record, we agree with the trial court that Mr. Handshoe's

comments do not fall within any of the definitions provided in subsections (a), (c),

or (d) of Article 971(F)(1). The trial court then looked to subsection (b) and found

that Mr. Handshoe's comments were made in connection with an issue before a

judicial proceeding, and therefore he met his *prima facie* burden under the initial

step of an Article 971 analysis. We disagree with the trial court's interpretation of

the statute in applying subsection (b) to the facts of this case.

        Statutory interpretation begins with the language of the statute itself. *M.J.*

*Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371 (La. 07/01/08), 998 So.2d 16, 27.

When the law is clear and unambiguous and its application does not lead to absurd consequences, then the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. However, when the language of the law is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10. Finally, when the words of the law are ambiguous, their meaning must be sought be examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.

Article 971(F)(1)(b) defines an act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue as "[a]ny written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law." We find this language to be ambiguous on its face. A statute is ambiguous if it is susceptible to different rational meanings. The language of Article 971(F)(1)(b) can be interpreted in such a way that the special motion to strike will apply to any and all statements made in connection with *any* issue under consideration by a government body or, alternatively, that the motion will apply only to statements made in connection with *public* issues under consideration by a government body. We believe that the former interpretation leads to absurd consequences. Under this reasoning, (which is the same interpretation used by the trial court), *any* cause of action arising from *any* written or oral statement made in connection with *any* kind of government activity or proceeding would be subject to special motions to strike regardless of whether or not the statements were made in connection with a public issue. Consequently, any party could defame or invade the privacy of a person involved in a divorce proceeding, traffic violation, child custody dispute, marriage,

mortgage registration, passport application, or driver's license renewal and be immunized from legal repercussions of damage to others through the use of an extraordinary procedural remedy.

Finding that the language of the statute is susceptible to different meanings and its application could potentially lead to absurd consequences, we must examine the purpose of the law to determine which of those meanings best conforms to the will of the legislature. To that end, we look to the legislative history behind the statute.

Code of Civil Procedure Article 971 is Louisiana's Anti-SLAPP statute. 'SLAPP' is an acronym for Strategic Lawsuit Against Public Participation, a term first coined by Professors George W. Pring and Penelope Canan to describe generally meritless suits brought by large private interests to deter common citizens from exercising their constitutional right to petition or to punish them for doing so. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Envtl. L. Rev. 3 (1989). Courts have difficulty identifying these suits which masquerade as ordinary lawsuits, most often in the form of defamation or a business tort. *Id.* SLAPP suits consist of a civil complaint or counterclaim (for monetary damages and/or injunction) filed against non-governmental individuals and/or groups because of their communications to a government body, or the electorate on an issue of some public interest or concern. *Id.* Typical examples of SLAPP suits include cases brought by 1) police, teachers, and other public officials and employees against their critics; 2) landlords against tenants reporting problems to the city health inspectors; 3) businesses against consumers reporting problems with their products or services; and 4) by dumps, toxic waste incinerators, bars, and other less-than-attractive enterprises against their NIMBY ("Not-In-My-Back-Yard") homeowner opponents. *Id.* At their heart, SLAPP suits threaten a citizen's

Case 1:14-cv-00159-KS-MTP   Document 93-1   Filed 02/04/16   Page 10 of 15

right to petition because the mere filing of the suit limits public participation in the political process.

In response to the growing prevalence of such suits and recognizing that traditional legal remedies such as abuse of process or malicious prosecution claims and motions for summary judgment were inadequate tools to ameliorate the problem, states enacted legislation creating the special motion to strike. This extraordinary procedural remedy limits discovery, dismisses meritless claims quickly, and awards attorney's fees to the prevailing party. California was the first state to adopt an anti-SLAPP statute in 1992[3], followed by many other states, including Louisiana in 1999 with Act 734.[4] The legislature expressed its intent for enacting Article 971 in Section 2 of Act 734:

> Section 2. The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation *in matters of public significance*, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly. (Emphasis added.)

The legislature's express desire to encourage participation in matters of public significance clearly suggests that Article 971 is intended to protect comments made in connection with public rather than private issues under consideration by our governmental bodies.[5]

---

[3] California Code of Civil Procedure § 425.16.
[4] Our courts have noted previously that the Louisiana and California anti-SLAPP statutes are "virtually identical." *Thomas v. City of Monroe, supra.* Examination of the statutes shows that when adopted, the Louisiana and California statutes matched word for word with only the State name changed. For a markedly different legislative approach to anti-SLAPP statutes, see New York Civil Rights Law § 76-a.
[5] Like the trial court, we also find that Mr. Yount is a private figure. However, Mr. Yount's status as a public or private figure is not dispositive of the initial analysis under Article 971 of whether or not the acts in question were in furtherance of constitutionally protected rights of free speech or petition in connection with a public issue. *Kirksey v. New Orleans Jazz & Heritage Found., Inc.,* 12-1351 (La. App. 4 Cir. 02/27/13), 116 So.3d 664. The determination of the plaintiff's status as a public figure may become relevant when determining the probability of success of a defamation claim because of the heightened standard of proof required for public figures to prove defamation. *See, Kennedy v. Sheriff of E. Baton Rouge, supra.*

-10-

A review of Louisiana jurisprudence further supports the interpretation that Article 971 is meant to protect comments relating to public issues. Applying the language of the statute, our courts have found SLAPP suits arising from the following protected activities: a television news report of a police report about detention of a city employee, (*Thomas, supra*); blog posts made by a former university professor about the operation of a public university and the conduct of its administrators, (*Baxter v. Scott*, 37,092 (La. App. 2 Cir. 05/16/03), 847 So.2d 225); comments made in a complaint filed with the Louisiana Board of Ethics by a developer alleging ethical violations by a police juror in connection with approval of housing development project, (*Darden, supra*); statements made to members of city water board commission about water board attorney employment contract, (*Aymond, supra*); statements made in a petition of appeal before state commission regarding award of state contract, (*Thinkstream, supra*); distribution of campaign literature by candidate prior to judicial election, (*Lamz, supra*); a letter of complaint about a police officer sent to Police Chief by private citizen, (*Davis v. Benton*, 03-0851 (La. App. 1 Cir. 02/23/04), 874 So.2d 185); publication of newspaper articles about sudden removal of local radio station, (*Starr v. Boudreaux*, 07-0652 (La. App. 1 Cir. 12/21/07), 978 So.2d 384); comments made by neighborhood association president before zoning board against construction of new bar, (*Melius, supra*); and statements in an ethics complaint with state authorized board of examiners alleging ethical violations, (*Hebert v. La. Licensed Prof'l Voc. Rehab. Counselors*, 07-610 (La. App. 3 Cir. 03/04/09), 4 So.3d 1002).[6]

---

[6] We note the similarities of the Louisiana cases reported and those traditional political activities that have prompted SLAPP lawsuits identified by Professor Pring: reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations. *Pring, supra*.

Conversely, our courts have found the following actions fell outside the ambit of Article 971: comments made by members of private hunting club to fellow members, (*Savoie v. Page*, 09-0415 (La. App. 3 Cir. 11/04/09), 23 So.3d 1013); allegations made in criminal complaint of forgery by clients against interior designer, (*Lyons v. Knight*, 10-1470 (La. App. 3 Cir. 05/11/11), 65 So.3d 257); and placing a "blow-up" sized photo at security checkpoints to ensure denial of entry, (*Williams v. New Orleans Ernest N. Morial Convention Ctr.*, 11-1412 (La. App. 4 Cir. 05/11/12), 92 So.3d 572). Notably, all of these suits involve private disputes between private parties not unlike the instant case before us.

Having determined that the language of Article 971 is ambiguous, we next examine the text of the law as a whole to determine its proper meaning. Section (A)(1) is the operative clause of Article 971. It reads, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana constitution *in connection with a public issue* shall be subject to a special motion to strike..." (Emphasis added.) To interpret subsection (b) as immunizing all statements made in connection with *any* issue, including those private issues that are of no public significance whatsoever, considered by a governmental body, would supercede the operative clause of the statute designed to protect individuals from strategic lawsuits against *public* participation. Section (A)(1) requires that the acts in question be in connection with a public issue. Had the legislature intended for special motions to strike to apply to *all* suits arising from speech or petition related activities, it would not have included phrases such as "in connection with a public issue" in the statute's operative clause.

Mr. Handshoe makes no argument in support of the trial court's interpretation of Article 971 in his motion and supporting memorandum. Rather,

-12-

Mr. Handshoe argues that his publication of a pornographic drawing and evidence under seal from private divorce proceedings was in connection with a public issue because: 1) his website, *www.slabbed.org*, regularly breaks news and comments on "public issues"; and 2) the blog posts dealt with publicly available information from court filings. These arguments are unpersuasive. The first is a logical fallacy of composition: while Mr. Handshoe may have previously written about public issues, that does not mean that every post on the website is "news" or about a "public issue." The comments here are in connection with a private issue between private parties. To the extent that the blog posts may be construed as commentary on a judicial proceeding, they may be protected in a defamation suit under the law of qualified privilege for fair reporting on a judicial proceeding; however, this has no bearing on plaintiff's initial burden of proving his actions arose in connection with a public issue under Article 971.

Mr. Handshoe's second argument is contradicted by the facts alleged in the petition. While the drawing was under seal, it was not publically available information. Mr. Handshoe confuses the public right of access to judicial proceedings with the right to free speech and petition. All of these rights are protected under the Constitutions of the United States and Louisiana, by the express language of the statute, but only actions arising under the latter rights are protected by an Article 971 motion. While information may be made available to the public for purposes of ensuring fairness in our judicial proceedings, there may be legal consequences should that same information be published and distributed as clickbait to millions of people on the internet in a manner that defames or invades the privacy of another. "The right to inspect judicial records should not trump the individual's privacy rights, especially where the purpose is to gratify

spite, promote public scandal, or to publicize the embarrassing details of a divorce case." *Copeland v. Copeland*, 07-0177 (La. 10/16/07), 966 So.2d 1040, 1052.

Careful consideration of the legislative history, Louisiana jurisprudence, and the text of the statute as a whole all support an interpretation of Article 971(F)(1)(b) as requiring the comments in question be in connection with a public issue under consideration by a legislative, executive, judicial or other authorized government body. Like the trial court, we find Mr. Yount's divorce proceedings to be a private domestic matter, not a matter of public significance for purposes of applying the Louisiana anti-SLAPP protections. Mr. Handshoe has not met his burden of proving that his publication of the pornographic drawing and evidence under seal is an act in furtherance of his right of petition or freedom of speech in connection with a public issue. Consequently, we need not analyze the probability of success of all of the claims alleged in Mr. Yount's petition.

**CONCLUSION**

Accordingly, we reverse the trial court's ruling. Mr. Handshoe's special motion to strike is denied, and pursuant to Louisiana Code of Civil Procedure Article 971(B), we award to Mr. Yount reasonable attorney fees and costs to be determined by the trial court on remand. We remand the case to the trial court for further consideration consistent with our ruling.

**<u>REVERSED AND REMANDED</u>**

-14-

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
ROBERT M. MURPHY
STEPHEN J. WINDHORST
HANS J. LILJEBERG

JUDGES



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

CHERYL Q. LANDRIEU
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND
## CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **Uniform Rules - Court of Appeal, Rule 2-20** THIS DAY **MAY 28, 2015** TO THE TRIAL JUDGE, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CHERYL Q. LANDRIEU
CLERK OF COURT

# 14-CA-919

**E-NOTIFIED**
CONNIE S. MONTGOMERY
JACK E. TRUITT

**MAILED**
PAMELA S. CHEHARDY
ALEXANDRA SHULTZ
RYAN D. KELLEY
ATTORNEYS AT LAW
149 NORTH NEW HAMPSHIRE STREET
COVINGTON, LA 70433

DANIEL G. ABEL
ATTORNEY AT LAW
2421 CLEARVIEW PARKWAY
METAIRIE, LA 70001

RAMONA G. FERNANDEZ
JANEY LAMAR, STUDENT PRACTIONER
7214 ST. CHARLES AVENUE
BOX 902
NEW ORLEANS, LA 70118

CHARLES L. LEARY, PHD
VAUGHN J. PERRET
189 TROUT POINT ROAD
EAST KEMPTVILLE
NOVA SCOTIA, CANADA, LA B5A 5X9

CHRIS E. YOUNT
545 TERRACE STREET
JEFFERSON, LA 70121